Mitchell Grove COLE, Appellant,

v.

The STATE of Texas, State.

Nos. 2–99–043–CR, 2–99–044–CR.

Court of Appeals of Texas,
Fort Worth.

April 27, 2001.

Law Offices of Michael Logan Ware; Michael Logan Ware, Fort Worth, Attorney for Appellant.

Tim Curry, Dist. Attorney, Charles M. Mallin, Chief of Appellate Section; Sylvia Mandel, Greg Pipes, Susan Hargis, Ass't Dist. Attorneys, Fort Worth, Attorneys for Appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant Mitchell Grove Cole was charged in two separate indictments with the offense of aggravated assault on a public servant. The cases were consolidated for trial, and a jury convicted Appellant on both indictments and assessed his punishment at ten years' confinement in each case, the sentences to run concurrently.

On appeal, Appellant brings four points challenging the legal sufficiency of the evidence and the propriety of the court's charge. Finding no reversible error, we affirm.

## FACTUAL BACKGROUND

On April 29, 1996, Officers Gilliland and Vanover of the DFW Airport Department of Public Safety observed a vehicle making unsafe lane changes. The officers pulled over the vehicle, and the driver, later identified as Appellant, told Gilliland that he did not have his driver's license with him. Appellant then falsely identified himself to the officer. When Gilliland told Appellant that there might be a warrant for his arrest and that Appellant would not be

able to leave until the officers found out who he was, Appellant ran back to his vehicle and jumped in the driver's seat. Gilliland followed Appellant and jumped into the car, reaching over the steering wheel to grab the keys out of the ignition. Gilliland testified that he was seated on the floorboard of the driver's side with his feet hanging out when the vehicle began to move. Gilliland stated that he could feel his feet dragging along the pavement. The officer held onto the steering column until he was eventually shoved from the car. Gilliland testified that he struck the pavement with the back of his head, and that he landed on his gun, which bruised his hip.

Officer Vanover testified that he jumped into the driver's side of Appellant's vehicle behind Officer Gilliland, pushed him forward, and attempted to spray Appellant with pepper spray. Vanover stated that he was inside the vehicle when it began moving, and that he could feel his feet dragging. "Once we started moving and he was fighting with us, the next thing that I know, I am looking at the sky and we are tumbling down the road." Vanover testified that his left arm was scraped, that he had gravel embedded in his palm, and that his hand swelled as a result of the trauma of being pushed out of the vehicle.

A civilian witness, Dale Johnson, testified that he saw two police officers leaning inside a vehicle, when the vehicle suddenly accelerated. While he could not be sure, Johnson believed that the officers were being dragged by the vehicle. He stated that the car traveled approximately fifteen to twenty feet before the officers tumbled down the road.

After a lengthy pursuit, Appellant was eventually apprehended when his car struck a pole.

The indictments alleged that Appellant intentionally or knowingly caused bodily injury to officers Vanover and Gilliland by "dragging" their bodies with his car.

## SUFFICIENCY OF THE EVIDENCE

In his first two points, Appellant argues that the evidence is legally insufficient to sustain his conviction. Specifically, Appellant contends that because both officers testified their injuries resulted from landing on the pavement after being pushed out of the vehicle, the evidence is legally insufficient to show Appellant intentionally or knowingly caused bodily injury to Vanover and Gilliland by dragging their bodies with his automobile, as alleged in the indictments.

## STANDARD OF REVIEW—LEGAL SUFFICIENCY

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.[1] The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] Our duty is not to reweigh the evidence from reading a cold

1. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

2. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997).

3. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

record but to act as a due process safeguard ensuring only the rationality of the fact finder.[4] The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.[5]

■ In determining the legal sufficiency of the evidence to show Appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." [6]

## DISCUSSION

■ A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.[7] A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.[8]

In *Sneed v. State*, police officers pulled over the defendant for a traffic violation.[9] After deciding to make an arrest, the officers approached the vehicle and instructed the defendant to turn off the ignition and exit the vehicle.[10] As the officers reached into the vehicle to grab the keys out of the ignition, the defendant suddenly accelerated, dragging the officers alongside the vehicle.[11] In that case, the court held that the evidence was sufficient for a rational jury to conclude that Sneed knew with reasonable certainty that accelerating the vehicle while the officers were leaning inside would cause bodily injury to the officers.[12] The court noted that the evidence revealed that Sneed was aware that the officers had extended their bodies partially inside the vehicle before he sped off.[13]

■ Similarly, we conclude that Appellant was aware Vanover and Gilliland were partially inside his automobile when he chose to drive off at a high rate of speed. Consequently, the evidence was sufficient for a rational jury to find that Appellant knew that speeding off with the two officers hanging out of his vehicle and later attempting to shove them from the vehicle was reasonably certain to cause bodily injury to Gilliland and Vanover. Accordingly, while there is no evidence that it was Appellant's intention to cause bodily injury to the officers by dragging them with his vehicle, we conclude that the evidence is legally sufficient to support the jury's finding that he did so knowingly.

■ Appellant also argues that there is no evidence that the officers' injuries were caused by dragging; rather, he contends that the injuries occurred when Vanover and Gilliland hit the pavement, that is, when the dragging stopped. Appellant is correct that neither officer testified that the dragging of their feet caused any injury. Nevertheless, "a person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another

4. *Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim.App.1996).

5. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991).

6. *Id.* at 846.

7. Tex. Penal Code Ann. § 6.03(a) (Vernon 1994).

8. *Id.* § 6.03(b).

9. 803 S.W.2d 833, 834 (Tex.App.—Dallas 1991, pet. ref'd).

10. *Id.*

11. *Id.*

12. *Id.* at 837.

13. *Id.*

cause." [14] Here, Vanover and Gilliland would not have been injured but for Appellant's actions in dragging them with his automobile. Additionally, the jury could reasonably infer from the evidence that Appellant's purpose in speeding off and shoving the officers from the vehicle was to rid himself of their presence. Accordingly, under the evidence before it, a rational jury could conclude that the officers' hitting the pavement was an inseparable part of the dragging event. We overrule Appellant's first and second points.

## CHARGE ERROR

### EXTRANEOUS OFFENSES

■ In his third point, Appellant argues that the trial court erred in denying his requested limiting instruction on extraneous offenses. The trial court did, however, include a limiting instruction in its charge to the jury. The complaint on appeal, therefore, is that the trial court did not include a "proper" limiting instruction in the jury charge.

The record is somewhat confusing on this point. After the trial judge began reading the charge, he excused the jury and allowed Appellant to present an additional challenge to the charge. Apparently, although Appellant had previously requested a limiting instruction on extraneous offenses, he was unaware that such an instruction had been included in the court's charge. That instruction limited the jury's consideration of evidence that Appellant had prior outstanding warrants

for his arrest at the time of the alleged offense. Appellant then lodged an objection to the limiting instruction that the court had included, and which had already been read to the jury, on the grounds that it failed to refer to a videotape of a news broadcast viewed by the jury, wherein Appellant states that he has successfully run from law enforcement officers in the past. The court denied Appellant's request and finished reading the charge.

■ Rule 105(a) of the rules of evidence requires that, upon request, a trial court must immediately give a limiting instruction regarding evidence that is admitted for a limited purpose.[15] The requirement is also satisfied if the trial court gives the limiting instruction to the jury in the charge.[16] A party opposing the evidence has the burden of objecting and requesting the limiting instruction at the introduction of the evidence.[17] Once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational persuasive power.[18] Here, the record reveals that at the time the videotape was admitted into evidence, Appellant did not object and request that the trial court give the jury a limiting instruction; rather, Appellant's request came after the trial court had begun reading the charge to the jury. As such, his request was untimely and preserved nothing for review.[19] Conse-

14. TEX. PENAL CODE ANN. § 6.04(a) (Vernon 1994).

15. TEX.R. EVID. 105(a).

16. *See Thompson v. State,* 752 S.W.2d 12, 14 (Tex.App.—Dallas 1988, pet. dism'd).

17. TEX.R. EVID. 105(a); *Wesbrook v. State,* 29 S.W.3d 103, 114 n. 8 (Tex.Crim.App.2000),

*cert. denied,* —— U.S. ——, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).

18. *Garcia v. State,* 887 S.W.2d 862, 878 (Tex. Crim.App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

19. *Wesbrook,* 29 S.W.3d at 114, n. 8.

quently, we overrule Appellant's third point.

## CULPABLE MENTAL STATES

In his fourth point, Appellant argues that the trial court erred in failing to limit the definitions of "intentionally" and "knowingly" in its charge to the jury because aggravated assault on a public servant is a result-oriented offense.[20]

 The trial court instructed the jury as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire *to engage in the conduct* or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. [Emphasis added]

 Where a defendant is charged with a "result of conduct" offense, the trial court errs in not limiting the definitions of the culpable mental states to the result of the defendant's conduct.[21] Appellant concedes that he did not object at trial to the allegedly erroneous definitions in the court's charge. Accordingly, we must decide whether the trial court erred and if so, whether "egregious harm" has occurred.[22]

 In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[23] The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.[24] Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.[25]

 Appellant argues that the erroneous definitions contained in the court's charge "severely compromised Appellant's basic defense—lack of intent to *cause* bodily injury." Appellant points to portions of his written statement, wherein he states that he "just wanted to get home and I didn't really want to hurt anyone," as evidence that he lacked the intent to cause bodily injury to the officers. We agree with Appellant that the trial court's failure to limit the definition of "intentionally" to the result of conduct would compromise an argument that Appellant lacked the intent to cause the result, as opposed to the intent to engage in the conduct.[26] Appellant does not argue, however, that the failure to limit the definition of "knowing-

**20.** *See Peterson v. State,* 836 S.W.2d 760, 764–65 (Tex.App.—El Paso 1992, pet. ref'd); *Sneed,* 803 S.W.2d at 835–36.

**21.** *Cook v. State,* 884 S.W.2d 485, 491–92 (Tex.Crim.App.1994).

**22.** *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996).

**23.** *Almanza,* 686 S.W.2d at 171; *see generally Hutch,* 922 S.W.2d at 172–74.

**24.** *Almanza,* 686 S.W.2d at 174.

**25.** *Hutch,* 922 S.W.2d at 171.

**26.** *See Peterson,* 836 S.W.2d at 764–65; *Sneed,* 803 S.W.2d at 835–36.

ly" in the court's charge compromised a defense that he did not act knowingly with respect to the result of his conduct. Where different theories of the offense are submitted to the jury in the disjunctive, a general verdict is sufficient if the evidence supports at least one of the theories submitted.[27]

Furthermore, we note that aggravated assault on a public servant is an offense that bears two separate, culpable mental states. The first is that the actor intentionally, knowingly, or recklessly causes bodily injury to another.[28] The second is that the actor knows that the object of his assault is a public servant lawfully discharging an official duty.[29] The trial court was, therefore, correct in instructing the jury on the entire statutory definition of "knowingly." In order to commit the offense of aggravated assault on a public servant, a person must act knowingly with respect to the circumstances surrounding his conduct, as well as knowingly with regard to the result of his conduct.[30]

Accordingly, under the facts of this case, we conclude that although the trial court erred in failing to appropriately limit the definition of "intentionally" in its charge to the jury, such error does not rise to the level of egregious harm. We overrule Appellant's fourth point.

### CONCLUSION

Having overruled all of Appellant's points on appeal, we affirm the judgment of the trial court.

---

27. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim.App.1992); *Kitchens v. State*, 823 S.W.2d 256, 257–58 (Tex.Crim.App.1991).

28. Tex. Penal Code Ann. § 22.02(a) (Vernon 1994).

29. *Id.* § 22.02(b)(2).

30. *See id.* § 6.03(b).