

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00077-CR

MARTIN ROBERTO HENRIQUEZ                                        APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Martin Roberto Henriquez appeals his conviction for continuous sexual abuse of a child or children under fourteen years of age.[2] In three issues,

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.02(b) (Vernon Supp. 2010) (providing that a person commits an offense if, during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse against a child or children under fourteen years of age).

Henriquez complains that the trial court erred by admitting evidence in violation of Texas Rule of Evidence 403, by denying his requested jury charge limiting the use of his custodial statement for impeachment purposes only, and by overruling his objection to the State's improper closing argument. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

R.H. and S.S. were best friends at school. S.S. spent the night at R.H.'s house for the first time at the end of their third-grade school year. R.H.'s parents—Henriquez and Leah—and R.H.'s six-year-old sister, C.H., were also at the house. The girls played in the yard during the evening and watched TV in R.H.'s bedroom after dark. Henriquez and Leah drank beer on the porch until Henriquez left to buy more beer. After he returned, he watched TV in bed with Leah, drank another beer, and had sex with Leah. Leah went to sleep, and Henriquez went to the living room to continue watching TV.

At some point that night, Henriquez went into R.H.'s bedroom while she and S.S. were asleep. He sat in a chair next to R.H.'s bed, reached over R.H., and touched S.S. on her "private part," which S.S. explained is the area "[w]here [she] pee[s] from." R.H. woke up and asked for a drink of water, and Henriquez brought her one. He sat by the bed until R.H. fell asleep again, and then he touched S.S. on her "butt." He left the room.

Later that night, R.H. woke up S.S. and told her that they should go sleep in Leah's bedroom. On the way, S.S. saw Henriquez in the living room; he motioned for her "to come here" as she passed by. S.S. continued to Leah's

2

bedroom with R.H. R.H. originally lay in the middle of Leah and S.S., but S.S. asked to trade places with R.H. so that she could sleep in the middle to prevent Henriquez from touching her again. About five minutes later, Henriquez entered the room and lay down next to R.H. Henriquez reached over R.H. and touched S.S. on her "private part where [she] pee[s] from." S.S. started crying and said, "Stop it." Leah woke up and asked S.S. what was wrong, to which S.S. responded, "He won't stop touching me. He won't stop touching my butt." Leah saw Henriquez's arm "kind of around [R.H.]," and R.H. "shook her head [']yes['] at [Leah]." Leah sent the girls back to R.H.'s bedroom. S.S. tried calling her mother that night, but no one answered the phone.

The next morning, Leah asked S.S. what had happened, and S.S. told her how Henriquez had touched her "vagina" and "butt" in R.H.'s bedroom and again in Leah's bed. Leah told Henriquez to leave and to take his beer so that there would not be a scene when S.S.'s parents arrived to pick up their daughter. Henriquez told Leah that he was "so sorry" and that he "just do[es] stupid things when [he is] drunk."

When S.S.'s mother called that morning, Leah told her what had happened and to do whatever she wanted with the information. S.S.'s mother called the police, and she and S.S.'s father drove to Henriquez's house. Police met S.S.'s parents on the road in front of Henriquez's house and told them to take S.S. to Cook Children's Medical Center.

3

The following day, Henriquez went to the police station because he "wanted to discuss his case." Officer Eric Perkins sat with Henriquez in the station's breakroom until Detective Juan Rios arrived. Officer Perkins read Henriquez the *Miranda* warnings even though Henriquez was not under arrest and, according to the officer, was free to leave at any point. Officer Perkins did not discuss the case with Henriquez. When Detective Rios arrived, Henriquez dictated a written statement to the detective at his desk; the detective typed up the statement, and Henriquez signed it. Henriquez was arrested that day. The written statement, admitted into evidence at trial, states,

> On 5/30/08, I was at home watching the Pistons basketball game on TV. I was drinking a new kind of beer that I had never tried. I drank about 8 beers during the night. . . . When the game was over I went into [R.H.]'s room to kiss my daughters goodnight. [C.H.] was in her bed and [R.H.] and [S.S.] were in [R.H.]'s bed. I kissed [C.H.] goodnight first, she was already asleep. I then went to [R.H.]'s bed. I sat on the side of the bed where [R.H.] was. I kissed [R.H.] goodnight. [S.S.] was on the other side of [R.H.] and she was lying face down. I reached over [R.H.] and touched [S.S.]'s butt. I touched her vagina at the same time I touched her butt. After that I got up and left the room . . . .

> After a while I got up from the couch and went back into [R.H.]'s room. I don't know what time it was. I sat on [R.H.]'s side of the bed. Both the girls were asleep. I don't know why but I reached over [R.H.] and grabbed [S.S.]'s butt and vagina again. I touched her over her clothes. I did not go into her pants or rape her or anything like that. I got up again and went back into the living room. . . . After that I stayed on the couch a little bit and I went to my room to go to bed. My wife[,] [R.H.,] and [S.S.] were in my bed. I got into bed and I was still wearing my clothes. When I got into bed I hugged [R.H.] because she was lying next to me. [S.S.] woke up crying and told my wife I had touched her butt. I don't remember touching her butt in my bed but I could have because she was

4

crying. I stayed in bed and my wife took the girls back into [R.H.]'s room. . . .

On 5/31/08 in the morning my wife confronted me about touching [S.S.] I told my wife I was sorry and that it was not like me to do something like that. . . . After I got things in order at work I came to the River Oaks Police Department to turn myself in. I know I was wrong and I am sorry for touching [S.S.]

A forensic nurse with Cook Children's Hospital's CARE Team interviewed R.H. and C.H. a few weeks after the incident with S.S. R.H., who was eight years old at the time, told the nurse that Henriquez had started touching her when she was seven years old, that he had "touched [her] butt with his pee-pee," and that she had seen him touch S.S.'s butt.

At Henriquez's trial, R.H. testified that one night while she and her sister were sleeping in her parents' bed with them, Henriquez had touched her "butt," had pulled her on top of him, and had kissed her in the way that he kisses Leah. R.H. explained that she could feel Henriquez's penis touching her "butt" and that he was breathing hard.

Henriquez testified on his behalf. He said that he went to the police station to clarify that he did not do anything to S.S. He testified that the statement that Detective Rios typed up was what the children had alleged, not what Henriquez had told Detective Rios. According to Henriquez, he signed the written statement because the detective told him that it was proof of their conversation and because Henriquez trusted him. Henriquez denied ever touching S.S. or R.H.

The jury convicted Henriquez of committing two or more acts of sexual abuse against a child or children younger than fourteen years of age, to wit: indecency with a child against S.S. and indecency with a child against R.H. The trial court sentenced him to thirty years' confinement.

### III. Admission of Evidence

In his first issue, Henriquez argues that the trial court abused its discretion by admitting evidence about an unrecorded custodial statement he made to Detective Rios in violation of Texas Rule of Evidence 403.[3]

Before the State cross-examined Henriquez, the prosecutors informed the trial court that they intended to cross-examine him for impeachment purposes about an unrecorded custodial statement that he made to Detective Rios several days after his initial statement to the detective. The State informed the trial court that Henriquez had told Detective Rios during that second conversation that he has cocaine and alcohol problems; that when he uses cocaine or drinks heavily, he goes out to his camper located on the property but away from his family; that

---

[3]Henriquez concedes that an unrecorded custodial statement is admissible under article 38.22, section 5 if it is voluntary and has a bearing upon the credibility of the accused as a witness. *See* Tex. Code Crim. Proc. Ann. art 38.22, § 5 (Vernon 2005). His argument is that his admissible statement nonetheless should have been excluded as more prejudicial than probative under rule 403. *See* Tex. R. Evid. 403. He also argues that the testimony "should have been objected to under Texas Rule of Evidence 608(b)," but because defense counsel did not object on that basis, we will not address it. *See* Tex. R. App. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *see also* Tex. R. Evid. 608(b) (prohibiting cross-examination about specific instances of conduct of witness for purpose of attacking or supporting witness's credibility).

6

he sometimes does not remember things he does when he is drunk or high; but that it was not possible that he had ever touched his children during a blackout.

Defense counsel argued at trial and argues on appeal that this evidence was not inconsistent with Henriquez's testimony and that the prejudicial effect of the evidence outweighed the probative value.[4] The trial court overruled defense counsel's objections.

On cross-examination, Henriquez testified that, while in jail, he asked to speak with Detective Rios again. Henriquez testified that the detective asked him during their second conversation if he uses cocaine, if he has blackouts, and if he could have touched the children during a blackout; Henriquez testified that he answered those questions in the negative and that the detective must have received that information from Leah. Henriquez testified that he told the detective that he would have remembered if he had touched any children. In its rebuttal case, the State called Detective Rios, who testified that Henriquez did tell him about his problems with cocaine and alcohol and with remembering things he does when he is drunk or high. Detective Rios testified that Henriquez said he always goes out to his camper to use drugs or drink heavily and waits about an hour before going back in the house with his family.

_____

[4]Henriquez also objected to evidence that he refused to commit to writing what he told the detective because "he was in enough trouble for touching his daughter's friend." Henriquez asserts on appeal that this statement "arguably could be construed as an admission," and he does not argue that the trial court abused its discretion by admitting it over his objection.

7

Henriquez specifically argues on appeal that the evidence that he had admitted having cocaine and alcohol problems and having lapses in memory when high or drunk was more prejudicial than probative because it "allowed the jury to believe that because [he] was an alcoholic and a drug user, he was more likely to engage in other degenerate activity, such as molesting children." We will assume, without deciding, that the trial court abused its discretion by admitting this evidence, and we will conduct a harmless error analysis.

Because any error is not constitutional, rule 44.2(b) is applicable. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories,

8

whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, in addition to the complained-of testimony, the jury was presented with Henriquez's written confession that he sexually abused S.S.; testimony from S.S. and R.H. detailing Henriquez's sexual abuse of them; Leah's testimony that Henriquez apologized to her after the incident with S.S.; and testimony from a CARE Team forensic nurse about her interview of R.H. regarding Henriquez's sexual assaults on her since she was seven years old.

Regarding Henriquez's alcohol problem and potential to blackout, the jury heard testimony that he had been drinking the night that he touched S.S., that both of the girls thought he was "drunk" when he touched S.S., and that when he apologized to Leah, he said he just "do[es] stupid things when [he is] drunk." Henriquez's written confession also states that he drank "about 8 beers" that night and that, although he remembered touching S.S.'s "butt and vagina" in R.H.'s bed, he did not "remember touching [S.S.'s] butt in [his] bed but [] could have because she was crying."

As we explain in more detail below, because no limiting instruction was requested when the State offered evidence about Henriquez's drug and alcohol problems and resulting blackouts, the jury's consideration of this evidence was not limited to impeachment purposes only. *See* Tex. R. Evid. 105(a); *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *Cole v. State*, 46 S.W.3d 427, 432 (Tex. App.—Fort Worth 2001, pet. ref'd). The State never mentioned

9

Henriquez's cocaine and alcohol use during closing arguments, and it only referenced Henriquez's blackouts briefly, stating that Henriquez refused to put in writing that he "didn't touch [his] daughters, but [he] does have blackouts." The State's theory was not that Henriquez was an alcoholic and drug abuser who could not remember that he had sexually assaulted R.H. and S.S.; instead, the State's theory was that he knew what he was doing, confessed to doing it, and then "[took] that stand and lie[d] through his teeth."

We conclude that, in the context of the entire case against Henriquez, any error in the trial court's admission of evidence concerning Henriquez's drug and alcohol problems and resulting blackouts did not have a substantial or injurious effect on the jury's verdict and did not affect his substantial rights. *See King*, 953 S.W.2d at 271. Thus, even assuming error, we disregard it. *See* Tex. R. App. P. 44.2(b). We overrule Henriquez's first issue.

### IV. JURY CHARGE ON IMPEACHMENT EVIDENCE

In his second issue, Henriquez argues that the trial court erred by denying his requested jury charge limiting the jury's use of statements that Henriquez made to Detective Rios during their second conversation to impeachment purposes only. At the charge conference, defense counsel requested the following be included in the jury charge:

> You are instructed that a witness may be impeached by showing that he or she has made other and different statements out of court from those made before you on the trial. Such impeachment evidence may be considered by you to aid you in determining if it does so, the weight, if any, to be given the testimony of the witness

10

at trial and his or her credibility; but such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in such case.

The trial court denied defense counsel's request.

When evidence that is admissible for one purpose but not admissible for another purpose is admitted, then the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request, the trial court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal. *See* Tex. R. Evid. 105(a); *Delgado*, 235 S.W.3d at 251; *Cole*, 46 S.W.3d at 432. The party opposing the evidence has the burden of requesting the limiting instruction at the introduction of the evidence. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). Further, if a limiting instruction is to be given, it must be given when the evidence is admitted in order for the instruction to be effective. *Id.* at 894. Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes. *Martin v. State*, 176 S.W.3d 887, 899 (Tex. App.—Fort Worth 2005, no pet.). If a defendant does not request a limiting instruction under rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge. *Delgado*, 235 S.W.3d at 251; *Cole*, 46 S.W.3d at 432.

Here, defense counsel objected to the admission of evidence of his second conversation with Detective Rios but did not request a limiting instruction when that evidence was introduced. Thus, the evidence was admitted for all purposes,

11

and the trial court had no obligation to include a limiting instruction in the jury charge. *See Delgado*, 235 S.W.3d at 251; *Cole*, 46 S.W.3d at 432. We hold that Henriquez's request was untimely and preserved nothing for review. We overrule his second issue.

## V. JURY ARGUMENT

In his third issue, Henriquez argues that the trial court erred by overruling his objection after the prosecutor improperly shifted the burden of proof in his closing argument. Specifically, Henriquez complains of the following statement made by the prosecutor during the State's rebuttal closing argument: "And with [C.H.], if they wanted to call her, if they thought she had something to say to help them, she's sitting right here."

To be permissible, the State's jury argument must fall within one of the following four general areas: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Here, during the State's opening statement, the prosecutor told the jury that, in addition to S.S., R.H. and C.H. would be testifying that Henriquez had molested them. The prosecutor concluded its opening statement, "At the conclusion of all the evidence, the State is going to stand before you and ask that you find [Henriquez] guilty of continuing sexual abuse for the molestation of three

12

children."  During trial, however, the prosecutor informed the trial court that the State had interviewed C.H. during a break and that she did not recall Henriquez touching her female sexual organ.  The State then waived the counts in the indictment that involved only C.H.

During closing arguments, the prosecutor urged the jury not to consider the fact that the State had originally charged Henriquez with offenses against C.H.— "Hold that against us.  That was our decision. . . .  But don't hold it against [S.S.] and [R.H.]  Those cases, those charges having to do with [C.H.] have nothing to do with the charge that's before you here today."

Defense counsel then began her closing argument,

I wholeheartedly disagree with the fact that you should not take into consideration the fact that they stood up here in opening statement and promised you three different children, three different counts of continuous sexual abuse.

They have had this case for as long as my client has been out of the house, a year and a half.  They should know what their evidence is going to yield. They should know by now what the kids are going to say.  And they purported to you that they did.

During the State's rebuttal closing argument, the prosecutor made the argument at issue here—that Henriquez could have called C.H. as a defense witness if he thought her testimony would benefit him.  Defense counsel objected that the prosecutor was "shifting the burden."  The prosecutor countered that he was "responding to defense argument," and the trial court overruled the objection.

Viewing the prosecutor's statement in context of the record as a whole, including the prosecutor's opening statement, the procedural background of the case, and defense counsel's closing statement, it is clear that the State was simply responding to defense counsel's argument that the jury should consider the fact that the State did not call C.H. to testify.  The State may comment on an appellant's failure to present evidence in his favor, as long as the remarks do not fault the defendant for failing to testify.  *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996); *see also Charles v. State*, No. 02-09-00022-CR, 2010 WL 2432048, at *2–3 (Tex. App.—Fort Worth June 17, 2010, pet. ref'd) (holding that argument that defendant would have offered cell phone records if favorable to him was proper response to defense argument that State did not offer any cell phone records); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (upholding as proper prosecutor's argument that "[i]f there is something out there that is going to exonerate you, you want to make it known").  Taken in context, the challenged comment did not impermissibly shift the burden of proof to Henriquez and was instead a proper answer to argument of defense counsel.  *See Jackson*, 17 S.W.3d at 674; *Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231.  We overrule Henriquez's third issue.

## VI. CONCLUSION

Having overruled Henriquez's three issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 26, 2011