

NUMBER 13-12-00574-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ELOY RODRIGUEZ,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

## On appeal from the 105th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

A jury found Eloy Rodriguez guilty of robbery, *see* TEX. PENAL CODE ANN. §
29.02(a)(1) (West 2011), and the trial court assessed a twenty-five year prison sentence
pursuant to the habitual felony offender statute. *See id.* § 12.42(d) (West Supp. 2013).
He now appeals by two issues: (1) the evidence is insufficient to prove that he

"intentionally, knowingly, or recklessly caused bodily injury to another," *id.* § 29.02(a)(1) (defining the offense of "robbery" to require "bodily injury to another"); and (2) the trial court erred in denying his motion for new trial based on misconduct by the jury. *See* TEX. R. APP. P. 21.3(c), (g) (stating that "the defendant must be granted a new trial" if the verdict is not "a fair expression of the jurors' opinion" or if "the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial"). For the reasons set forth below, we affirm the judgment of the trial court.

## I. BACKGROUND

Rodriguez was indicted for robbery as follows:

ELOY RODRIGUEZ, defendant[], on or about NOVEMBER 7, 2011, in Nueces County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause bodily injury to BRYAN HARDIN by operating a motor vehicle in a manner that caused BRYAN HARDIN to be dragged by said motor vehicle, AND THE GRAND JURY further presents that the Defendant, ELOY RODRIGUEZ, has previously been convicted of two felonies, the first previous conviction being for UNAUTHORIZED USE OF A MOTOR VEHICLE, on JANUARY 4, 1991, in Cause Number 89CR1861H, styled The State of Texas v. ELOY RODRIGUEZ, in the 347th District Court of NUECES County, Texas, and the second previous conviction being for BURGLARY OF A HABITATION, on APRIL 11, 2005, in Cause Number 00CR2283H, styled the State of Texas v. ELOY RODRIGUEZ, in the 347th District Court of NUECES County, Texas, and that the second previous conviction was for an offense that occurred after the first previous conviction became final, against the peace and dignity of the State.

As noted above, a jury found Rodriguez guilty as charged, and the trial court assessed a twenty-five year prison sentence. The trial court imposed sentence in open court on August 22, 2012. Subsequently, on September 21, 2012, Rodriguez filed a motion for new trial in which he asserted the following:

Juror, Lorie LaCour, filed a letter with the Court alleging juror misconduct. (Attached as Exhibit A). Said juror alleges that she was pressured into the

2

verdict and would have held otherwise if she was not pressured. Thus, the verdict was decided by any manner other than a fair expression of the juror's opinion and the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial as prescribed in TRAP 21 (c) and (g), respectively.

*See id.* The letter by juror LaCour stated as follows:

Dear Honorable Judge Angelica Hernandez:

I was on a jury of 12 for the case of Eloy Rodriguez. I must let you know how I feel. For six hours I didn't feel comfortable convicting him of a higher charge. One juror said, "I'm not getting paid by my work to be here, I want this over with" looking straight at me. Then when we asked you on paper what happens if we can't agree, your reply was something like ... you jurors should be competent enough to come to a unanimous decision... I felt pressured. One of our arguments between us jurors was they were afraid of Eloy getting probation and they debated he wasn't even in jail that he was out on bond. I don't know why that wasn't disclosed to us. Had I known the sentence was so severe, I would have never gave in. His priors were not violent. Please remember Elloy [sic] Rodriguez in 10 years from now. I would like to testify on his behalf to the panel who decides when prison time is enough. I can't imagine "good behavior" in prison when inmates deal in close proximity with each other for years. Even I have a hard time with my own family if we are around each other too long. Lol. I really would like someone to let me know how I can help change laws like jurors not knowing sentencing and not letting us know he's in jail, (that's not fair). Please know I am not being disrespectful. Life is so short and sentencing is too harsh. It didn't fit this crime. I will think about him in 10 years and worry myself. Remember, he was given 25 years to life w/o [sic] parole.

On December 17, 2012, the trial court held a hearing on Rodriguez's motion for new trial. Rodriguez called LaCour as a witness. She testified in relevant part that she felt intimidated by three other jurors. One of the jurors yelled at her, "What do you not understand about the law? It's right here." Two other jurors said something to the effect that they had to get back to work and could not spend any more time deliberating. LaCour said she "kind of felt beat down." She ultimately gave in, telling the other jurors, "I'll agree to it but this is not my agreement. I don't want to do this." According to

3

LaCour, if the trial court had polled the jury, which it did not, she "would have said not guilty."

On cross-examination, LaCour admitted that she did not get anything in exchange for her verdict, nobody threatened her with physical harm, nobody tried to take anything from her, and "in the end [she] said that . . . [she] would agree" to the jury's verdict of guilt. However, she also testified that she believed that the elements of the offense of robbery had not been proven:

Q. What elements had not been proven?

A. Well, we didn't know if the security guard had come off the curb or not. That was one thing we kept debating the whole time. We didn't know if the security guard had come off the curb or not.

Q. And in the Jury Charge was there a question about that?

A. Yes. We all questioned that and wished we had known.

Q. No. The Jury Charge given to you that you were to answer didn't ask you to make an opinion about that, did it?

A. Right. . . .

Q. So as far as the questions that were asked on the Jury Charge, did you answer those correctly? Yes or no?

A. Yes, uh-huh.

Q. Okay.

A. Yes.

At the conclusion of the hearing, the trial judge indicated that she was taking the motion under advisement. She also indicated that she was concerned about the motion being denied by operation of law: "Well, that's what I was trying to think. What is the timeline on this? I don't want it to overrule by operation of law. I want to rule on it. So

4

let me see." On February 20, 2013, the judge signed a written order denying the motion. Subsequently, Rodriguez appealed his conviction to this Court.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, Rodriguez argues that the evidence is insufficient to support the jury's verdict finding him guilty of committing robbery because there was no evidence that he "intentionally, knowingly, or recklessly" caused bodily injury to another, as required by law and alleged in the indictment. TEX. PENAL CODE ANN. § 29.02(a)(1).

### A. Standard of Review

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id.* "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* "Direct and circumstantial evidence are treated equally." *Id.* "Circumstantial evidence is as probative as direct

5

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

## B. Applicable Law

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

In relevant part, the Texas Penal Code defines the offense of robbery as follows:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . .

TEX. PENAL CODE ANN. § 29.02(a)(1).

In this case, Rodriguez challenges the sufficiency of the evidence to prove that he acted "intentionally, knowingly, or recklessly" in causing bodily injury to Hardin, as alleged in the indictment. *See id.* We must affirm the conviction if the State proved that Rodriguez was at least "reckless," which is the lowest degree of culpability authorized by the indictment. *See Villarreal*, 286 S.W.3d at 327.

The penal code defines the "reckless" mental state as follows:

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the

6

circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (West 2011).

"In the vast majority of cases, the issue of whether the evidence supports a finding of culpable recklessness is a question for the jury." *See Williams v. State*, 235 S.W.3d 742, 768 (Tex. Crim. App. 2007). "We do not sit as a 'thirteenth juror' and disagree with the jury's finding that the appellant did the very acts that the State alleged []he committed." *Id.* at 769. However, "on occasion . . . [culpable recklessness] becomes a question of law." *Id.* at 768. The Texas Court of Criminal Appeals has explained as follows:

> [I]n addressing the culpable mental state of recklessness under section 6.03(c), the fact[-]finder (and a reviewing court) must examine the defendant's conduct to determine whether
>
> > (1) the alleged act or omission, viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred;
> >
> > (2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation (i.e., it involved an "extreme degree of risk, considering the probability and magnitude of the potential harm to others");
> >
> > (3) the defendant was consciously aware of that "substantial and unjustifiable" risk at the time of the conduct; and
> >
> > (4) the defendant consciously disregarded that risk.

*See id.* at 755–56 (footnote omitted).

## C. Discussion

On appeal, Rodriguez argues that the evidence is insufficient to prove that he acted recklessly because there was no evidence that he knew that Hardin was holding onto Elizabeth Villarreal, his shoplifting partner, when he began to drive away from the store where the couple had committed the theft at issue in this case:

> Mr. Rodriguez was shoplifting with another person and walked out without any merchandise. His partner, Ms. Villarreal, was grabbed by store security, and she ran to the car that Mr. Rodriguez was driving and tried to jump into the car through the window. The store security person grabbed onto Ms. Villarreal's legs and then ankles while she was hanging from the car and the car was slowly moving forward. Mr. Rodriguez did not know that Mr. Hardin, the store security person, was holding on to Ms. Villarreal. Mr. Rodriguez did not intentionally or knowingly cause bodily injury to the store security person. He did not even know he was there. Furthermore, it is not reasonably foreseeable that a security person would be holding on to the legs and then ankles of a woman who was jumping into a moving car. The car was parked, and when Ms. Villarreal grabbed the door and jumped into the window, she told Mr. Rodriguez to "go baby go" and let go of the brake, moving slowly for a few feet. . . Mr. Rodriguez did not act recklessly as defined by . . . [Section] 6.03(c) [of the Texas Penal Code].

In response, the State argues that there was sufficient evidence to prove that Rodriguez knew that Hardin was holding onto Villarreal. At trial, Rodriguez testified that, just before he put the car in motion, he saw Hardin holding Villarreal "in a bear hug, completely body wrapped with his arms." In addition, the State directs our attention to Hardin's written statement, admitted as Defense Exhibit 1, in which Hardin summarized the incident in relevant part as follows:

> Rodriguez then pulled his car up to the sidewalk, while I held onto Villarreal. Villarreal then grabbed onto the driver side door frame of the car that Rodriguez was driving and she then yelled "go, drive, drive!" Rodriguez started to drive at a slow rate of speed and Villarreal and I both fell to the ground and the car drug Villarreal and myself for about ten feet. Villarreal then let go of the car.

8

The State argues that "[g]iven the proximity of Hardin and Villarreal to . . . [Rodriguez], the jury could have reasonably inferred that . . . [Rodriguez] was aware that Hardin was holding onto Villarreal." The State argues further that "the fact that . . . [Rodriguez] did not quickly accelerate when Villarreal told him to go also supports that conclusion."

In addition, the State argues that the evidence is sufficient to prove that Rodriguez acted recklessly because "dragging a person with a car constitutes a conscious disregard of a substantial and unjustifiable risk that bodily injury could occur." In support of this proposition, the State cites *Gunn v. State*, No. 03-03-00513-CR, 2004 WL 2110394, at *4 (Tex. App.—Austin Sep. 23, 2004, pet. ref'd) (mem. op., not designated for publication).[1] For the reasons set forth below, we agree with the State that the evidence is sufficient to prove that Rodriguez acted recklessly. *See* Tex. Penal Code Ann. § 6.03(c).

First, we recognize that "determining whether an act or omission involves a substantial and unjustifiable risk requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred,

---

[1] In *Gunn*, an eyewitness to a robbery testified that she saw the defendant "pull away at a high rate of speed, causing the wheels of the car to spin." *Gunn v. State*, No. 03-03-00513-CR, 2004 WL 2110394, at *1 (Tex. App.—Austin Sep. 23, 2004, pet. ref'd) (mem. op., not designated for publication). In addition, the victim "testified that his right elbow got caught between the seat and the shoulder harness as he was dragged along and ran beside the vehicle." *Id.* The victim "testified that he said, 'Stop. I'm stuck. I'm stuck. I'm caught up.'" *Id.* The victim "said he feared being run over by the rear wheel of the car." *Id.* He "recalled that he traveled with the car for a distance of two or three car lengths." *Id.* On appeal, the defendant argued that he did not act recklessly because he "did not consciously disregard a substantial and unjustifiable risk that bodily injury could occur when he started driving away." *Id.* at *3. The court of appeals rejected the argument, concluding that "[b]ecause appellant admits in his videotaped statement that he accelerated while . . . [the victim's] arm was in the window of the car, no rational jury could find that he did not consciously disregard a substantial and unjustifiable risk that bodily injury could occur from his conduct." *Id.* at *4. Based on the foregoing, the State argues that the evidence in this case is sufficient to prove that Rodriguez acted recklessly when he operated a motor vehicle in a manner that caused Hardin to be dragged by the vehicle, as alleged in the indictment.

9

without viewing the matter in hindsight." *Williams*, 235 S.W.3d at 753. Therefore, we will examine the evidence in greater detail.

At trial, Hardin testified as a witness for the State. After describing the events that led him to pursue Rodriguez and Villarreal as they exited the store, he gave the following account of what happened outside the store:

> I grabbed Mr. Rodriguez with one hand and I grabbed Ms. Villarreal with the other. Mr. Rodriguez escaped my grasp and ran to his car. Elizabeth stayed - - I was able to hold on to her the entire time. She was jumping up and down, screaming and yelling, trying to get away. Mr. Rodriguez pulled his car around to the curb. And I looked straight at him and I said, do you want this to turn into a robbery charge? And he looked like he sat there and thought about it for a second. And his wife was still yelling and screaming. I was still holding on to her. She tried to jump through the driver's side window. . . .
>
> She tried to jump through the driver's side window, or go into the driver's side window. And she yelled - - after she got part of the way through she yelled, go, baby, go. And I was still holding on to her and he started driving. Now, he didn't floor it, but he was moving. What rate of speed, I don't know. And now we went - - we were both now getting drug by the car, and I'm holding on to her. . . .
>
> I'm going to guess he drove seven to ten feet, maybe 15 at most. She finally let go of the car. At that point we're both on the ground. I still have a hold of her legs. And he drives about another five feet and the door opens and he gets out and looks at me. Then two customers, two very large customers, come running up. I don't know who they are to this day. They come running up and they're bearing down on Mr. Rodriguez. And at that point he jumps back in his car. One of the customers grabs on to him, tries to pull him out and is not able to. And Mr. Rodriguez hits the gas and he's gone. . . .

The following exchange also occurred on direct examination:

> Q. Did it cause you pain when you got drug by that car?
>
> A. Yes, it did.
>
> Q. Did it cause you bodily injury?
>
> A. Yes, it did.

10

Q. From what you could observe of Mr. Rodriguez, did he know that he was doing this?

A. He had to have known his wife was hanging on. I know that.

Q. Is there any way that you can be driving a two-door car with somebody wedged in the window and not be aware of it?

A. Me personally? No.

Q. Okay. And based on what you observed, you believe that all of this happened while they were both committing theft of property?

A. That's correct.

In addition, Michael Sauceda, a loss prevention officer with the store where the couple was shoplifting, testified that he watched as Villarreal got away from Hardin and attempted to jump into Rodriguez's vehicle. According to Sauceda, the vehicle started to pull away slowly and Hardin jumped on top of Villarreal. When Villarreal was unable to jump into the vehicle, she fell down and extended her arm. The driver of the vehicle, Rodriguez, grabbed her arm. Hardin and Villarreal were then both dragged on the ground of the parking lot for about two car lengths before Villarreal let go. Sauceda thought they were both going to be run over by the vehicle's driver-side rear tire. When Sauceda finally arrived, Hardin and Villarreal were both screaming in pain. They both had "road rash, scrapes." Hardin, who was wearing a short-sleeve shirt, was "cussing profusely." His shirt and jeans were torn. His elbows and forearms had "road rash" exposing raw "meat."

Finally, Rodriguez testified. On direct examination, he testified in relevant part as follows:

[W]hen . . . [Villarreal] started yelling for help, I turned for like a split second. Okay? I couldn't see the guy because he was behind her. So

11

that's when I jumped in the car. I came around the first car. It's a little sports car; so it makes real quick turns. So when I turned around the vehicle that was next to me, I seen that he had her in a bear hug, completely body wrapped with his arms. So as I was driving towards them, he's - - I'm thinking he's thinking that I'm going to hit him with the car because he turns her around, uses her as a shield as I'm coming towards them. Okay? So as I'm coming towards them, I'm getting next to them to see what the guy looks like because, you know, I couldn't see him. At that point when I stopped next to them, they were standing on my blind side. It's a sports car; so my seat goes all the way to the back. So when I went like that, she grabbed the door. The door is oval. It's real slippery. There's no grip. . . . So when she grabbed the door, she goes, go, go. So I let go of the brake. The car was crawling. It wasn't even idling. It was crawling. So the next thing I know I turned and her fingers were gone. So I must have gone about two or three feet. When I went forward, I must have gone about another five feet before I realized that she wasn't there. So I stopped. When I stopped, a black male tried to enter this way and through the passenger side. So they were fighting with me, trying to get me out of the car, pulling my hair, scratching my sides from both sides.

The following exchange also occurred on direct examination:

Q. Now, what was going through your mind when Mr. Hardin has Mrs. [sic] Villarreal in a bear hug?

A. You know what? I was just thinking about getting away. I wasn't thinking about nothing else.

Q. All right. You weren't thinking about stopping and helping her?

A. Well, yeah, at that time when I had stopped, yes. I was about to get out to see what happened to the guy because I didn't know where the guy had went or if she was okay or, you know, what actually happened. I mean, I didn't understand if he had her in a bear hug that she grabbed the door, you know. I mean, you know, he's a big guy, you know. And I don't see how she grabbed the door. I'm thinking that he let her go, gave her the opportunity to grab the door, then grabbed her legs. That's what I'm thinking.

On cross-examination, Rodriguez testified in relevant part as follows:

Q. And you were the one operating the motor vehicle, correct?

A. Yes[, but] . . . I didn't know that . . . [Hardin] was there.

12

Q.    But you just said you knew he was there.  You knew he was there?

A.    At one point, yes.

Q.    You knew he was there when you let the car move with both of them attached, didn't you?

A.    No, I did not.

Based on the foregoing, we conclude that, under the circumstances of this case, Rodriguez's conduct in operating a motor vehicle involved a "substantial and unjustifiable" risk that Hardin and Villarreal would get dragged and thereby sustain bodily injuries.  *See Williams*, 235 S.W.3d at 755; *Dobbins v. State*, 228 S.W.3d 761, 767–68 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) ("It is within common knowledge that use of automobiles has caused countless deaths and serious injuries."); *Noyola v. State*, 25 S.W.3d 18, 20 (Tex. App.—El Paso 1999, no pet.) (holding that appellant used vehicle in manner capable of causing death or bodily injury by accelerating vehicle in reverse, dragging complainant behind him); *see also Gunn*, 2004 WL 2110394, at *4 (concluding that appellant's conduct in accelerating vehicle with another individual's arm inside vehicle's window constituted a conscious "disregard [of] a substantial and unjustifiable risk that bodily injury could occur from his conduct").

Furthermore, the record supports an inference that Rodriguez knew he was operating his vehicle in a manner that would cause Hardin to be dragged and sustain injuries.  *See* Tex. Penal Code Ann. § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.").

13

Rodriguez testified that he saw Hardin holding Villarreal in a "bear hug" immediately before she grabbed the driver's side door to the vehicle he was driving. Rodriguez also testified that when he caused the vehicle to move forward, he knew that Villarreal was hanging onto the vehicle. Furthermore, he also testified that at this point, he thought Hardin was holding onto Villarreal's legs. Although Rodriguez testified that he did not know that he was moving the car with Hardin attached, the jury was free to believe the part of Rodriguez's testimony indicating that he knew Hardin was attached to the vehicle and disbelieve the rest of what he said. *See Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) ("The jury was free to believe this testimony by appellant, and disbelieve the rest of what he said."). In addition, as the State points out, Rodriguez's proximity to Villarreal and Hardin supports an inference that Rodriguez knew that Hardin was being dragged by the vehicle as Rodriguez caused it to move forward. *See Rodriguez v. State*, 129 S.W.3d 551, 555 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("[C]apacity to cause serious bodily injury or death may be shown by factors such as . . . the physical proximity of the accused and the victim."). Finally, the record also supports a finding that by causing the vehicle to move forward, Rodriguez did, in fact, cause Hardin to be dragged by the vehicle and thereby suffer bodily injuries, as alleged in the indictment. *See Williams*, 235 S.W.3d at 755; *see also Gunn*, 2004 WL 2110394, at *4.

Second, we conclude that, considering the probability and magnitude of the potential harm it creates, a law-abiding person would not operate a motor vehicle in a manner that could cause another individual to be dragged by the vehicle because it involves an extreme degree of risk of causing serious bodily injury. *See* TEX. TRANSP.

14

CODE ANN. § 545.401(a) (West 2011) ("A person commits an offense if the person drives a vehicle in willful or wanton disregard for the safety of persons or property."); *Williams*, 235 S.W.3d at 755; *Dobbins*, 228 S.W.3d at 767–68; *see also Perry v. State*, No. 05-02-00500-CR, 2003 WL 1818136, *3–4 (Tex. App.—Dallas April 8, 2003, no pet.) (mem. op., not designated for publication) (holding that evidence was sufficient to prove the "appellant used the car in a manner that was capable of causing death or bodily injury" when he "just stomped on the gas and took off and started dragging [a woman] . . . through the parking lot approximately ten to fifteen feet"). Based on the facts presented in this case, we conclude that the risk of causing bodily injury by dragging two individuals with a motor vehicle was of such a magnitude that Rodriguez's disregard of it constituted a gross deviation from the standard of care that a reasonable person would exercise in the same situation. *See Williams*, 235 S.W.3d at 755.

Third, the factual situation in this case is "one so inherently fraught with danger as to create, in the mind of the objectively reasonable person, the awareness of a substantial and unjustifiable risk of serious bodily injury." *See id.* at 763. Based on the evidence presented in this case, as summarized and quoted in relevant part above, a rational trier of fact could draw a reasonable inference that Rodriguez was consciously aware of the "substantial and unjustifiable" risk that Hardin and Villarreal could sustain bodily injuries from being dragged by the vehicle. *See id.* at 755–56; *Cole v. State*, 46 S.W.3d 427, 432 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding "evidence was sufficient for a rational jury to find that Appellant knew that speeding off with the two officers hanging out of his vehicle and later attempting to shove them from the vehicle was reasonably certain to cause bodily injury to [them] . . . .").

15

Fourth, the evidence established that Rodriguez consciously disregarded the substantial risk of harm to Hardin and Villarreal. *See Williams*, 235 S.W.3d at 657. We recognize that "stupidity, irresponsibility, thoughtlessness, or ordinary negligence do not constitute reckless disregard of a substantial and unjustified risk." *Id.* at 758 (quotations omitted). The conduct in this case exceeded mere "stupidity, irresponsibility, thoughtlessness, or ordinary negligence." *Id.* The evidence showed that Rodriguez drove his vehicle for "about ten feet" knowing that Hardin and Villarreal were being dragged by it. This constituted a conscious disregard of a substantial risk that bodily injury could occur. *See Williams*, 235 S.W.3d at 755–56; *Sneed v. State*, 803 S.W.2d 833, 837 (Tex. App.—Dallas 1991, pet. ref'd) ("We hold that the evidence was sufficient for a rational jury to conclude that Sneed knew with reasonable certainty that speeding off in the Blazer would cause bodily injury to Heard and Swinney . . . from being dragged [by the vehicle] and from [subsequently] falling to the pavement."); *see also Gunn*, 2004 WL 2110394, at *4.

In sum, the evidence was sufficient because, on this record, a rational trier of fact could have found beyond a reasonable doubt that Rodriguez acted recklessly. *See* TEX. PENAL CODE ANN. § 6.03(c); *Jackson*, 443 U.S. at 324 (holding that a defendant "is entitled to . . . relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). Therefore, his first issue is overruled.

### III. MOTION FOR NEW TRIAL

In his second issue, Rodriguez contends that the trial court erred in denying his motion for new trial based on jury misconduct. *See* TEX. R. APP. P. 21.3(c), (g).

16

Rodriguez filed his motion on September 21, 2012, along with a proposed order setting a hearing on the motion. The trial court was required to rule on the motion within seventy-five days from the date the sentence was imposed in open court—a period of time, which in this case, ended on November 5, 2012. *See* TEX. R. APP. P. 21.8(a).[2] The trial court did not timely rule on the motion. Therefore, the court lost jurisdiction over the motion, which was "deemed denied" as a matter of law as of November 5, 2012. *See* TEX. R. APP. P. 21.8(c); *Fowler v. State*, 803 S.W.2d 848, 849 (Tex. App.— Corpus Christi 1991, no pet.) (per curiam) ("[A] trial court is without jurisdiction to rule on a motion for new trial after the expiration of 75 days from the date which sentence[] is imposed in open court.").

Nevertheless, on December 17, 2012, the trial court held a contested evidentiary hearing on Rodriguez's motion for new trial. As noted above, the trial court heard testimony from one of the jurors. After the trial judge considered the evidence and arguments presented, she expressed concern about the motion being overruled by operation of law. She subsequently signed a written order denying the motion on February 20, 2013.

On appeal, Rodriguez argues that the trial court erred in denying his motion for new trial, on the merits, because he established jury misconduct and was therefore entitled to a new trial. *See* TEX. R. APP. P. 21.3(c), (g). However, Rodriguez has not addressed the fact that the trial court failed to conduct a timely hearing and failed to make a timely ruling on his motion for new trial. *See* TEX. R. APP. P. 21.8(a). Furthermore, the State argues, and we agree, that the trial court lost jurisdiction to

---

[2] The record reflects that the trial court imposed sentence on Rodriguez in open court on August 22, 2012.

conduct proceedings on the motion for new trial seventy-five days from the date the sentence was imposed in open court. *See State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012) ("These deadlines . . . have jurisdictional significance."). We also agree with the State that the trial court had no authority or discretion to grant the motion after it was denied by operation of law. *See State v. Moore*, 225 S.W.3d 556, 569 (Tex. Crim. App. 2007) ("[T]he trial court's authority to rule on a motion for new trial extends to the seventy-fifth day (so long as a timely original motion for new trial is filed on or before the thirtieth day) after sentence is imposed or suspended in open court."). Therefore, because they occurred after the trial court lost jurisdiction, the trial court's hearing on Rodriguez's motion for new trial and its subsequent ruling were a nullity. *See State ex rel Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987) ("Any action on the motion by the trial court after this time expired would have constituted a nullity.") (quoting *Meek v. State*, 628 S.W.2d 543, 547 (Tex. Crim. App. 1982)). Accordingly, they will not be considered on appeal. *See Zaragosa v. State*, 588 S.W.2d 322, 324 (Tex. Crim. App. 1979) ("[I]t has been held that a hearing conducted after a motion for a new trial has been overruled by operation of law will not be considered on appeal.").

We note that in this appeal, Rodriguez has not raised any error in the trial court's failure to conduct a timely hearing on his motion for new trial or its failure to make a timely ruling on the motion. *See Crowell v. State*, 949 S.W.2d 37, 38 (Tex. App.—San Antonio 1997, no pet) ("In her sole point of error, Crowell contends that the trial court erred in failing to timely grant a hearing on her motion for new trial."). In any event, any such error would have been waived by Rodriguez's failure to object. *See Baker v.*

18

*State*, 956 S.W.2d 19, 24–25 (Tex. Crim. App. 1997) (en banc) ("By failing to object to the untimely setting, Appellant has failed to preserve his complaint that the trial judge should have held a timely hearing."); *McIntire v. State*, 698 S.W.2d 652 (Tex. Crim. App. 1985) ("[I]t has been held that the right to file and have *heard* a motion for new trial is deemed absolute, provided the right is asserted within the time specified by law.") (quotations omitted); *Crowell*, 949 S.W.2d at 38 ("When a motion for new trial is presented to the trial court, the burden of ensuring that the hearing thereon is set for a date within the trial court's jurisdiction is properly placed on the party presenting the motion.").

Finally, we note that Rodriguez has not asserted that his motion for new trial was improperly denied by operation of law. *See* Tex. R. App. P. 21.8(c). Accordingly, we conclude that Rodriguez has not demonstrated error in the denial of his motion for new trial. His second issue is therefore overruled.

## IV. Conclusion

The judgment of the trial court is affirmed.

NORA L. LONGORIA<br>
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
16th day of January, 2014.