**VACATE and AFFIRM; and Opinion Filed July 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00354-CR

**RICKEY TRENT STANLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 062945**

## OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

After appellant Rickey Trent Stanley's vehicle struck and killed Deputy Sheriff Chad Key, a jury convicted appellant of two offenses: (1) felony murder (in the course of committing felony DWI[1]), and (2) aggravated assault with a deadly weapon causing serious bodily injury to a public servant. The jury assessed punishment at 99 years in prison and a $10,000 fine for the felony murder conviction, and 42 years in prison and a $10,000 fine for the aggravated assault conviction. In two issues on appeal, appellant argues that his conviction for aggravated assault violates double jeopardy and the evidence is legally insufficient to support his conviction for felony murder. We resolve appellant's first issue in his favor and vacate his conviction for

---

[1] DWI is a third-degree felony if the defendant has been previously convicted two times of any offense relating to the operating of a motor vehicle while intoxicated. TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2014).

aggravated assault. We resolve appellant's second issue against him and affirm his conviction for felony murder.

**BACKGROUND**

**The Facts**

Around 9:30 p.m. on the date of his death, Key and another member of the Grayson County Sheriff's Office were called to assist with a vehicle pursuit of a suspect traveling westbound from Fannin County towards Grayson County. To end the pursuit, troopers put spikes in the two westbound lanes of State Highway 82, a four-lane divided highway with a speed limit of 70 miles per hour. The spikes flattened the tires on the suspect's truck and a second vehicle. When Key arrived at the scene, the suspect had been apprehended and his truck was stopped in the middle of the right lane of traffic. Key got out of his vehicle, stood near another emergency vehicle parked in the right lane of traffic, and began to direct traffic into the left lane. Around 10:30 p.m., appellant was driving in the left westbound lane of Highway 82 behind another vehicle. As the vehicles approached the scene where Key was directing traffic, the other vehicle engaged its left turn signal and moved towards the left into the turn lane. As appellant started to move toward the right lane to pass the vehicle in front of him, he struck and killed Key. Other officers at the scene estimated that appellant was traveling between 55 and 60 miles per hour. Appellant did not stop his vehicle and was pulled over about a mile down the road. Appellant failed standard field sobriety tests and his blood alcohol content was 0.184.

Appellant's defense theory (presented through cross-examination and the testimony of an accident-reconstruction expert) was that the collision was unavoidable and caused by the negligence of Key and others at the scene. Appellant's accident-reconstruction expert testified that appellant was not driving dangerously or at an excessive speed, and the collision was

unavoidable due to factors such as the lack of illumination at the scene and Key's dark clothing and lack of reflective gear.

**The Indictments**

The felony murder indictment alleged that appellant, while committing the offense of felony driving while intoxicated, caused Key's death by committing an act clearly dangerous to human life

> by approaching and driving a motor vehicle into a scene where traffic was being diverted into one lane and striking Chad Key at a speed in excess of that which was safe, by failing to keep a proper look out, by operating a motor vehicle after ingesting alcohol, by operating a motor vehicle while intoxicated, by failing to apply the brakes of a motor vehicle, by failing to apply the brakes of a motor vehicle in a timely manner, by disobeying a law enforcement officer's direction to slow down and merge into one lane or by any combination of the preceding . . . .

The aggravated assault with a deadly weapon indictment alleged that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Key, a law enforcement officer who was discharging an official duty,

> by approaching and driving a motor vehicle into a scene where traffic was being diverted into one lane and striking Chad Key at a speed in excess of that which was safe, by failing to keep a proper look out, by operating a motor vehicle after ingesting alcohol, by operating a motor vehicle while intoxicated, by failing to apply the brakes of a motor vehicle, by failing to apply the brakes of a motor vehicle in a timely manner, by disobeying a law enforcement officer's direction to slow down and merge into one lane or by any combination of the preceding . . . .

In short, appellant was charged with two crimes arising from the same conduct on the same date involving the same victim.

## DOUBLE JEOPARDY

In his first issue, appellant argues that his conviction for aggravated assault with a deadly weapon should be vacated because it violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, specifically the protection against multiple punishments for the same offense. We agree.

**Applicable Law**

The Double Jeopardy Clause protects the accused against multiple punishments for the same offense. U.S. CONST. amend. V; *Shelby v. State*, 448 S.W.3d 431, 435 (Tex. Crim. App. 2014). "A double jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once." *Shelby*, 448 S.W.3d at 435 (citing *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)).

To determine the intent of the legislature, we begin with the language in the statutes and apply the *Blockburger* elements test. *Shelby*, 448 S.W.3d at 435–36; *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932). "That test asks 'whether each provision requires proof of a fact which the other does not.'" *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015). If we determine that the offenses are not the same under the *Blockburger* test, we must presume "that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed." *Id.* But this "presumption can be rebutted by a showing, through various factors, that the legislature 'clearly intended only one' punishment." *Id.* (quoting *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)). These nonexclusive factors, known as the *Ervin* factors, are:

> (1) whether [the] offenses are in the same statutory section or chapter; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus or gravamen; (6) whether the common focus tends to indicate a single instance of conduct; (7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger* (a liberalized *Blockburger* standard); and (8) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

*Id*.

If we determine that the legislature did not intend multiple punishments under the facts of a particular case, the remedy is to affirm the conviction for which the greatest sentence was assessed and to vacate the other conviction. *Shelby*, 448 S.W.3d at 440.

**Analysis**

Appellant concedes that felony murder and aggravated assault with a deadly weapon against a public servant "are not the 'same-offense' under a strict application of *Blockburger*[.]" We agree with appellant. Consequently, we do not need to analyze these offenses under the *Blockburger* elements test, and we instead move directly to an examination of the *Ervin* factors to determine whether the presumption that the legislature intended to permit multiple punishments under the facts of this case has been rebutted. *See Benson*, 459 S.W.3d at 72.

**1. The offenses are not in the same statutory section or chapter.** The offenses of felony murder and aggravated assault with a deadly weapon do not appear in the same statutory section or chapter of the penal code. Felony murder is under Chapter 19 of the penal code entitled "Criminal Homicide"; aggravated assault with a deadly weapon is under Chapter 22 of the penal code entitled "Assaultive Offenses." *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3) (West 2011) (felony murder), 22.02(a)(2) (aggravated assault with deadly weapon). This factor weighs in favor of a determination that the legislature intended the conduct to be punished under both statutes. *See Shelby*, 448 S.W.3d at 437.

**2. The offenses are not phrased in the alternative.** Because the two offenses at issue are not in the same section of the penal code, they cannot be phrased in the alternative and this factor does not apply. *See id.* at 438.

**3. The offenses are not similarly named.** The names of the offenses—"felony murder" and "aggravated assault with a deadly weapon"—do not share any words in common. *See Benson*, 459 S.W.3d at 79 (noting offenses are similarly named if they share a common word in

–5–

the title). This factor weighs in favor of a determination that the legislature intended the conduct to be punished under both statutes.

**4. The offenses have the same punishment range.** Both felony murder and aggravated assault as alleged in this case are first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.02(c) (felony murder is first-degree felony), 22.02(b)(2)(B) (aggravated assault "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty" is first-degree felony). Consequently, both offenses carry the same punishment range, and this factor weighs in favor of treating the offenses as the same for double jeopardy purposes.

**5. The offenses share a similar focus or gravamen.** Felony murder is a result-oriented offense that "punish[es] one for causing the death of another, even if engaging in the behavior that ultimately ended in death . . . was not intended to cause the death." *Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008). Consequently, the focus of felony murder is the death of the individual. *Id*. Aggravated assault causing bodily injury is also a result-oriented offense. *Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014). As charged in this case, the gravamen of aggravated assault with a deadly weapon is causing bodily injury. *See Shelby*, 448 S.W.3d at 438 ("The gravamen of aggravated assault . . . is either causing bodily injury or threating imminent bodily injury, depending on which theory has been pleaded in the charging instrument.").

Although the focus of these two offenses as defined in the penal code is not exactly the same—one is the death of the individual and the other is the bodily injury to the individual—they are very similar. And we have been instructed that when conducting a double-jeopardy analysis "the essential elements relevant" to that analysis "are those of the charging instrument, not of the penal statute itself." *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994). In this case, the State charged appellant with two offenses arising from the same conduct that resulted in the

death of the same individual. We conclude that under the facts of this case the focus is the death and bodily injury resulting in the death of the deputy. Consequently, this factor weighs heavily in favor of treating the offenses as the same for double-jeopardy purposes. *See generally Shelby*, 448 S.W.3d at 438 ("focus . . . of the two offenses is the best indicator of the Legislature's intent to treat the offenses as the same or different for double jeopardy purposes").

**6. The common focus tends to indicate a single instance of conduct.** This factor requires a court to consider the allowable unit of prosecution for the offenses. *See id.* at 436. In this case both offenses have the same allowable unit of prosecution—each victim. *See id.* at 439 (each victim is the allowable unit of prosecution for assaultive offenses); *cf. Bigon*, 252 S.W.3d at 372 ("In this case, there were two victims, so each victim would constitute a separate offense."). And as we explained above, in this case there was one victim, and both offenses alleged that the same conduct caused the death of or bodily injury to that same victim. This factor weighs heavily in favor of treating the offenses as the same for double-jeopardy purposes. *See Shelby*, 448 S.W.3d at 438; *Bigon*, 252 S.W.3d at 372.

**7. Some of the elements that differ between the offenses can be considered the same under an imputed theory of liability.** The elements of felony murder are (1) a person (2) commits an act clearly dangerous to human life (3) that causes the death of an individual (4) while committing or attempting to commit a felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). The elements of aggravated assault with a deadly weapon against a public servant are (1) a person (2) intentionally, knowingly, or recklessly (3) causes bodily injury to another (4) and uses or exhibits a deadly weapon (5) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(a), (b)(2)(B). Clearly these offenses have different elements, although some are similar and vary only by degree. *Compare id.* § 19.02(b)(3) *with id.* § 22.02(a), (b)(2)(B). For example, using or

exhibiting a deadly weapon and causing bodily injury to another are similar to the elements of committing an act clearly dangerous to human life that causes the death of an individual.

Felony murder is an unintentional murder committed in the course of committing a felony. *Lomax v. State*, 233 S.W.3d 302, 306–07 (Tex. Crim. App. 2007) (citing *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004)). Ordinarily, the culpable mental state for the underlying felony "supplies this culpable mental state" for felony murder. *Id.* at 307. But the underlying felony in this case is driving while intoxicated, which likewise does not have a culpable mental state. *See Perez v. State*, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000) (felony driving while intoxicated "does not even require a culpable mental state"). The court of criminal appeals has held, however, that "intoxication can be viewed as an imputed form of recklessness." *Shelby*, 448 S.W.3d at 440 (citing *Ervin*, 991 S.W.2d at 816). Consequently, both offenses in this case share the culpable mental state of recklessness under an imputed theory of liability. *See id.*; *Ervin*, 991 S.W.2d at 816.

Additionally, a comparison of the offenses as charged in the indictment shows that the alleged conduct for each offense in this case was exactly the same. *See Parrish*, 869 S.W.2d at 354 ("the essential elements relevant to a jeopardy inquiry are those of the charging instrument, not of the penal statute itself"). We conclude that this factor weighs heavily in favor of the offenses being the same for double-jeopardy purposes.

**8. Legislative history is silent regarding intent to treat the offenses as the same or different**. Appellant does not cite, and we have not found, legislative history concerning whether the legislature intended these offenses to be treated the same or different for double jeopardy purposes. Consequently, this factor "is inconsequential in this case." *See Shelby*, 448 S.W.3d at 440.

In summary, we conclude that the offenses share the same punishment range, focus, allowable units of prosecution, and elements under an imputed theory of liability. As a result, we conclude that the offenses as charged in this case are the same for double-jeopardy purposes and that dual convictions for both offenses violate double jeopardy. *See id.*; *see also Bigon*, 252 S.W.3d at 372 ("[I]t is hard to fathom that the legislature intended for one drunk-driving accident to result in multiple homicide convictions for each victim[.]"). We resolve appellant's first issue in his favor and vacate his conviction for aggravated assault.

SUFFICIENCY OF THE EVIDENCE

In his second issue appellant argues that the evidence is insufficient to support his conviction for felony murder.

**Applicable Law**

When assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170. Each fact does not need to point directly and independently to the defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

When we review the legal sufficiency of the evidence we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial.

*Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The "law as authorized by the indictment" consists of the statutory elements of the offense and those elements as modified by the indictment. *Id.*

A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of the individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(3).  Felony DWI may serve as the underlying felony in a felony murder prosecution. *See Lomax*, 233 S.W.3d at 311.

**Analysis**

There is no dispute that appellant committed felony DWI or that he caused the death of Key by striking Key with his vehicle.  Nevertheless, appellant argues that the evidence is insufficient to support his conviction because it does not show that he committed an act clearly dangerous to human life.  The indictment essentially alleged that appellant committed acts clearly dangerous to human life by:

- driving a motor vehicle at an excessive speed into a scene where traffic was being diverted;

- failing to keep a proper lookout;

- operating a motor vehicle after ingesting alcohol;

- operating a motor vehicle while intoxicated;

- failing to timely apply the brakes of a motor vehicle; and

–10–

- disobeying a law enforcement officer's direction to slow down and merge into one lane.

With respect to these alleged acts, appellant first argues that the evidence fails to show that he drove at an excessive or unsafe speed and failed to timely apply his brakes because (1) the officers who said he was driving 55 to 60 miles per hour "based their opinions on split-second views of [appellant's] truck, and not on any qualitative analysis such as accident reconstruction," and (2) appellant's expert testified that appellant's speed was approximately 38 to 40 miles per hour. Second, appellant argues that there is no evidence that he failed to keep a proper lookout or disobeyed a law enforcement officer because the evidence showed that appellant never saw Key due to Key's lack of illumination and the "wash-out" effect of the bright flashing strobes of police overhead lights. Finally, appellant argues that there is no "conclusive evidence" that he drove in a dangerous manner after ingesting alcohol because (1) the officer who pulled appellant over said that appellant "was in fact in control of his vehicle and timely stopped" when he was pulled over, and (2) appellant's expert testified that appellant was not driving dangerously and that Key's death was more likely caused by the failures and lack of protective measures taken by police at the scene than appellant's consumption of alcohol or the operation of his vehicle.

We need only address the first act alleged—driving at an excessive speed into a scene where traffic was being diverted. There is conflicting evidence of appellant's speed at the time he hit Key. Appellant's expert testified that appellant was driving through the scene at 38 to 40 miles per hour. But after he was pulled over, appellant told one of the officers that he was driving through the scene at 60 miles per hour. Officers on the scene also estimated appellant's speed to be between 55 and 60 miles per hour. To the extent that appellant argues that the evidence is insufficient to support a finding that he drove 55 to 60 miles per hour through the scene because his expert testified to the contrary, the jury was free to resolve this conflict in

favor of the State. *See Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). Alternatively, a reasonable jury could have determined that even traveling at 38 to 40 miles per hour after dark through the scene of an accident where emergency personnel were present, police lights were flashing, and traffic was being diverted was an act clearly dangerous to human life.

Having considered all of the evidence in this case in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed an act clearly dangerous to human life by driving at an excessive speed where traffic was being diverted. As a result, the evidence is sufficient to support appellant's conviction for felony murder. We resolve appellant's second issue against him.

## CONCLUSION

We resolve appellant's first issue in his favor and vacate his conviction for aggravated assault. We resolve appellant's second issue against him and affirm his conviction for felony murder.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Publish
TEX. R. APP. P. 47.2(b)

140354F.P05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RICKEY TRENT STANLEY, Appellant

No. 05-14-00354-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 062945.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **VACATED** in part and **AFFIRMED** in part.

We **AFFIRM** appellant Rickey Trent Stanley's conviction for Count 1, murder. We **VACATE** appellant Rickey Trent Stanley's conviction for Count 3, aggravated assault causing serious bodily injury to a public servant.

Judgment entered this 30th day of July, 2015.