## Renee VALENCIA, Appellant

v.

## The STATE of Texas, Appellee

### No. 07–14–00103–CR

Court of Appeals of Texas, Amarillo.

January 21, 2016

Julie Goen Panger, for Renee Valencia.

Jeffrey S. Ford, for the State of Texas.

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

## OPINION

James T. Campbell, Justice

Appellant Renee Valencia appeals from his conviction by jury of the offense of felony murder [1] and the resulting sentence of imprisonment for life. Appellant challenges his conviction through three issues. We will affirm.

## Background

Zachary Mata was shot and killed during an early-morning-hours street fight outside a Lubbock bar. The medical examiner identified four gunshot wounds and testified Mata died from those wounds. Ten shell casings were found in the area, all fired by the same 9 mm weapon. The firearm was found on the ground in front of the bar.

Appellant was indicted for Mata's murder. The indictment contained a count alleging appellant intentionally or knowingly caused Mata's death by shooting him with a firearm. It also contained a count alleging felony murder, in that appellant committed an act clearly dangerous to human life, by shooting Mata with a firearm, and thereby caused his death, while in the course and furtherance of his intentional or knowing commission of the felony of aggravated assault. The indictment contained a deadly weapon allegation. On appellant's not-guilty plea, the State presented evidence on the felony-murder count. [2]

DNA evidence found on the firearm did not connect appellant with the shooting. The testimony of several witnesses, however, including a Lubbock police officer, identified appellant as the shooter. Appellant did not testify, but his recorded statement to police was in evidence. In the statement, he acknowledged he participated in the fight outside the bar but denied he had or shot a gun. His defense emphasized the inconsistencies in the testimony of witnesses present during the fight and shooting. The defense also pointed to Jesus Olivas, who was present and whose DNA was on the firearm, as the shooter.

The jury found appellant guilty and, after hearing punishment evidence, imposed a sentence of life imprisonment. This appeal followed.

## Analysis

### Sufficiency of the Evidence

■ In appellant's first issue, he challenges the sufficiency of the evidence to establish his identity as the person who shot and killed Mata. His argument focuses on the DNA evidence found on the murder weapon.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex.Crim.App.2010) (plurality op.). When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *Id.* at 906, 907 n.26. "[T]he reviewing court is re-

---

1. TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2014).

2. The indictment also contained a third count, alleging murder on another theory. All but the felony-murder count were dismissed.

quired to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899. Reconciliation of conflicts in the evidence is within the exclusive providence of the jury. *Smith v. State,* No. 10–13–00278–CR, 2014 WL 4783251, at *7, 2014 Tex.App. LEXIS 10401, at *17 (Tex.App.–Waco Sept. 18, 2014, no pet.) (mem. op., not designated for publication) (*citing Wyatt v. State,* 23 S.W.3d 18, 30 (Tex.Crim.App.2000)).

In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007). Our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007). If, given all of the evidence, a rational jury would *necessarily* entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires an appellate court to reverse the conviction. *Swearingen v. State,* 101 S.W.3d 89, 98 (Tex.Crim.App.2003) (*citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992) (emphasis in original)).

The 9mm pistol and the empty magazine it contained were swabbed for DNA analysis. The State's forensic scientist testified he analyzed DNA obtained from three locations on those items. DNA from the pistol's trigger area was consistent with a mixture of at least three individuals, none of whom could be identified. The scientist testified that, to a reasonable degree of scientific certainty, Jesus Olivas was the source of DNA found in a blood stain on the front of the pistol's slide. And DNA was obtained from a swab of the magazine.

It was consistent with a mixture. Olivas could not be excluded as a contributor to the mixture, but appellant was excluded.

As noted, several witnesses identified appellant as the person who shot Mata. Justin Winkfield testified he heard appellant say he was going to get his "strap"[3] and saw appellant with a gun. Winkfield said when the shooting started, he went to the ground. Appellant, he said, "was standing right next to me shooting. And he looked at me a couple of times and kept on shooting." Winkfield told the jury he saw appellant shoot Mata at "point blank range." He also saw appellant wipe off the gun and throw it on the ground. Some of the witnesses testified others also handled the gun.

Jesus Olivas testified under immunity. He was at the bar at the time of the shooting, and said he considered appellant to be a friend. At one point, he saw appellant "pull out a gray pistol" from "his waistband." He testified, "After I see [appellant] pull out the pistol, I said, 'Hey,' I put my hand—I tried to stop him. He didn't say nothing to me, he just looked at me and began to open fire."

Other witnesses testified similarly. Three witnesses testified they saw appellant throw the gun to the ground as he was being chased by a police officer. As noted, the gun was later recovered.

Lubbock police officer Jennifer Pierce testified she was driving by the bar that night and stopped when she heard shots and screaming. She located the shooter, "observed him firing his gun … at the victim." At that point, she testified, "I'm trying to grab my gun, throw the vehicle in park, and exit my patrol car all while I'm maintaining visual of the shooter." Asked if she was able to do that, she replied

---

**3.** There was testimony the term "strap" refers to a gun.

affirmatively. The shooter began running, and she "chased him all throughout the parking·lot, using the vehicles as a cover...." Ignoring her commands to stop, he continued, and eventually got into the back of a moving pickup truck. Another officer pursued the truck, and eventually arrested the man riding in the truck's bed, later identified as appellant.

Officer Pierce also testified that during her pursuit of appellant she believed he still was carrying the weapon. When appellant raised his arm from the bed of the pickup, she believed he was going to fire at her, and she fired several rounds at the pickup. Pierce testified the man she identified as the shooter was the same person she chased and shot at. Appellant later was found to have a wound on his knee, and a bullet fired from Pierce's service weapon fell out of appellant's pants leg when he was taken to the jail. The jury also saw video from Pierce's patrol car depicting some of the events to which she testified.

Viewed in the light most favorable to the verdict, the evidence permitted a rational jury to identify appellant as the shooter. It was for the jury to reconcile conflicting testimony, and jurors were free to accept the clear testimony of several witnesses that appellant was the person who shot and killed Mata. His flight from the scene may also be considered. No witness said Olivas was the shooter, and, as noted, all the shell casings found at the shooting site were fired from the same weapon. The DNA evidence did not require the jury to harbor a reasonable doubt as to appellant's identity as the shooter. Finding the evidence of appellant's identity sufficient, we overrule his first issue.

Lesser–Included Offense

■ In appellant's second issue, he contends the trial court reversibly erred by denying his request to include in the charge to the jury an instruction on the lesser-included offense of aggravated assault. The trial court concluded the evidence did not raise in fact aggravated assault as a lesser-included offense. We agree, and overrule the issue.[4]

Appellant argues aggravated assault was a lesser-included offense of felony murder in this case, under the terms of article 37.09(1) of the Code of Criminal Procedure. Under that statute, an offense is a lesser-included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (West 2013).

Appellant's argument arises from testimony that, at one point during Mata's confrontation outside the bar with those in appellant's group, someone hit Mata in the

---

4. The court's charge on guilt/innocence does contain an error other than that discussed in appellant's brief. The indictment alleged appellant acted with a culpable mental state of intentional or knowing when he committed the felony of aggravated assault. The application paragraph of the charge also required the jury to find appellant acted intentionally or knowingly. In its abstract definition of the offense of assault, however, the charge told the jury assault may be committed by intentionally, knowingly or recklessly causing bodily injury to another. The inclusion of a reckless culpable mental state in a felony murder prosecution with aggravated assault on the victim as the underlying felony is improper for the same reason that manslaughter may not be used as the underlying felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2014); *Johnson v. State,* 4 S.W.3d 254, 258 (Tex. Crim.App.1999). Because no objection was raised, the error in the abstract part of the charge is reversible only if it caused appellant egregious harm. *Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004).

Having reviewed the entire record, and considering the correct wording of the application paragraph, we are satisfied no egregious harm is shown.

chest with a large rock. Some testimony identified appellant as the person who threw the rock. Appellant's brief asserts the theory that the jury could have concluded he was not the shooter but caused Mata serious bodily injury by hitting him with the rock, making him guilty of aggravated assault.

■ Under the first step of the required two-step analysis, an offense is a lesser-included offense of another offense under article 37.09(1) if the indictment for the greater offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim.App.2010); *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex.Crim.App.2009) (op. on reh'g) (*citing Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App.2007)). By the second step of the analysis, we determine whether the evidence presented at trial supports the lesser-included offense as a "valid, rational alternative" to the charged offense. *Wortham v. State*, 412 S.W.3d 552, 557–58 (Tex.Crim.App.2013) (citation omitted).

The felony-murder count alleged appellant:

> did then and there intentionally or knowingly commit the felony of Aggravated Assault, and while in the course of and furtherance of the commission of said Aggravated Assault, did then and there commit an act clearly dangerous to human life, to-wit: by shooting the

said ZACHARY MATA with a firearm, and did thereby cause the death of ZACHARY MATA.

The evidence on which appellant's theory relies, showing he threw a rock and injured Mata in the chest, demonstrates both different conduct, and a different resulting injury, from those alleged in the felony-murder indictment. For that reason, the evidence does not support aggravated assault as a valid, rational alternative to the felony-murder charge in this case.[5] *See Irving v. State*, 176 S.W.3d 842, 846 (Tex.Crim.App.2005); *Luna v. State*, No. 08–13–00084–CR, 2015 WL 1949176, at *6–7, 2015 Tex.App. LEXIS 4363, at *20 (Tex.App.–El Paso Apr. 29, 2015, pet. ref'd) (mem. op., not designated for publication); *Jordan v. State*, Nos. 03–10–00776–CR, 03–10–00777–CR, 03–10–00779–CR, 2012 WL 2981103, at *2–3, 2012 Tex. App. LEXIS 5733, at *6–7 (Tex.App.–Austin July 11, 2012, pet. ref'd) (mem. op., not designated for publication); *Green v. State*, No. 14–06–00155–CR, 2007 WL 1558731, at *7, 2007 Tex.App. LEXIS 4370, at *23 (Tex.App.–Houston [14th Dist.] May 31, 2007, no pet.) (mem. op., not designated for publication) (analyzing conduct allegations necessary for lesser-included offense). *See also Wortham*, 412 S.W.3d at 559 (Keller, P.J., concurring) (addressing analysis of purported lesser-included offense of result-of-conduct offense).[6]

Evidence of Gang Affiliation

■ In his third issue, appellant contends the trial court erred during the punishment stage of trial when it allowed a deputy to testify that appellant acknowledged a gang affiliation without being ad-

---

5. We note also that appellant's theory depends on evidence showing that the rock caused Mata serious bodily injury. We find in the record no evidence of the nature of an injury to Mata's chest.

6. Both felony murder and aggravated assault are "result-oriented" offenses. *Stanley v. State*, 470 S.W.3d 664, 669 (Tex.App.–Dallas 2015, no pet.) (citations omitted).

vised as required by *Miranda* and Code of Criminal Procedure article 38.22.[7] Over objection, the deputy told the jury appellant had admitted to "being a gang member of the Surenos, his set was the Pocos Locos Surenos."

After review of the record, we find we need not address appellant's contention that the court erred by admitting the deputy's testimony because we readily agree with the State's alternate argument that its admission, even if erroneous, was harmless. Appellant's affiliation with the Pocos Locos was made abundantly clear by other evidence received without objection. The deputy testified without objection that appellant's tattoos associated him with the Surenos, and that his association with the group was demonstrated by symbols appellant used in a letter he sent from the county jail. Photographs depicting the tattoos also were admitted without objection. The photographs show the word "pocos" tattooed in large letters across one of appellant's forearms and "locos" across the other forearm. The deputy's testimony that appellant obtained those particular tattoos during his pretrial confinement in the Lubbock County jail, in violation of jail rules, was not disputed.[8]

▮ The failure to give timely *Miranda* warnings generally results in the State's being required to forfeit the use of any statement obtained during that interrogation. *Martinez v. State,* 272 S.W.3d 615, 619 n.10 (Tex.Crim.App.2008) (*citing Miranda,* 384 U.S. at 444, 86 S.Ct. 1602)).

The Court of Criminal Appeals has held that a trial court's erroneous admission of a defendant's statement in violation of the Fifth Amendment is federal constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(a). *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex. Crim.App.2001); *see* Tex.R.App. P. 44.2(a). Under rule 44.2(a), a judgment of conviction or punishment must be reversed unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex.R.App. P. 44.2(a); *McCarthy,* 65 S.W.3d at 52. Error in admitting an appellant's statement is not harmless beyond a reasonable doubt if there is a reasonable likelihood that the error materially affected the jury's deliberations. *See McCarthy,* 65 S.W.3d at 55. Thus, a "reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Id.* Given the record before us, we find any error in admitting the deputy's testimony was harmless beyond a reasonable doubt. We resolve appellant's third issue against him.

### Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

**7.** *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see* Tex.Code Crim. Proc. Ann. art. 38.22 (codifying the holding of *Miranda* ). The parties assume statements from custodial interrogation taken in violation of *Miranda* or article 38.22 are inadmissible in the punishment stage of trial. We do not address the question. *See Garcia v. State,* No. 09-10-00020-CR, 2011 WL 379117, at *3 n.3, 2011 Tex.App. LEXIS 775,

at *9–10 n.3 (Tex.App.–Beaumont February 2, 2011, pet. ref'd) (mem. op., not designated for publication).

**8.** The deputy testified that tattoos are commonly obtained in the jail, despite rules subjecting the practice to disciplinary action. He testified inmates "get contraband" and "pick tattoos on themselves, or on others."