

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00103-CR

**REGINALD HARRIS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 66th District Court
Hill County, Texas
Trial Court No. F-141-21**

## MEMORANDUM OPINION

In two issues, appellant, Reginald Harris, contends that the trial court: (1) failed to properly define the applicable culpable mental states in the jury charge or tailor the definitions of the culpable mental states to the relevant conduct elements; and (2) assessed unauthorized fees. We affirm as modified.

## Background

Harris was charged by indictment with aggravated assault against a public servant. Specifically, the indictment alleged that Harris,

> intentionally, knowingly, or recklessly cause[d] serious bodily injury to Chris Gonzales by striking him on the head with a wooden table leg, and the defendant did then and there know that the said Chris Gonzales was a public servant, to-wit: a Hill County Corrections Officer, in the lawful discharge of an official duty, to-wit: to begin the book-in progress [sic].

*See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b)(2)(B). A jury convicted Harris of the charged offense and made a deadly-weapon finding. The jury assessed punishment at thirty years in prison. The trial court sentenced Harris in accordance with the jury's verdict and signed a judgment reflecting as such. Additionally, the trial court assessed $290 in court costs and $67 in reimbursement fees. The trial court certified Harris's right of appeal, and this appeal followed.

## The Jury Charge

In his first issue, Harris argues that the trial court failed to properly define the applicable culpable mental states in the jury charge or tailor the definitions of the culpable mental states to the relevant conduct elements. Assuming, without deciding, the jury charge contains error, we cannot conclude that Harris was egregiously harmed.

STANDARD OF REVIEW

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App.

1996).  If the jury charge contains error, the appellate court must analyze that error for harm.  *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).  The court will reverse if an error was properly preserved by objection and is not harmless.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Conversely, where a party does not properly preserve error by proper objection, the court will only reverse for egregious harm, meaning Harris did not receive a fair and impartial trial.  *Id.*  To obtain a reversal for jury-charge error, Harris must have suffered actual harm and not merely theoretical harm.  *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Harris did not object to the jury charge in the trial court; thus, he must show egregious harm.  *See Almanza*, 686 S.W.2d at 171.  In examining the record for egregious harm, we consider the jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole.  *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).  Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.  *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

DISCUSSION

**The Entirety of the Jury Charge**

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03; *see McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). When an offense is delineated explicitly as to the type of conduct, the trial court should limit the statutory definitions in the jury charge to the culpable mental state required. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Harris was charged by indictment with aggravated assault on a public servant by using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(1). The elements of aggravated assault with a deadly weapon against a public servant are (1) a person (2) intentionally, knowingly, or recklessly (3) causes serious bodily injury to another (4) and uses or exhibits a deadly weapon (5) against a person the actor knows if a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(a), (b)(2)(B); *see Stanley v. State*, 470 S.W.3d 664, 670 (Tex. App.—Dallas 2015, no pet.).

As charged in the indictment in this case, assault on a public servant required proof of two separate conduct elements—result of the conduct and circumstances

surrounding the conduct—with different culpable mental states as to the two separate conduct elements. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1); *Cole v. State*, 46 S.W.3d 427, 433-34 (Tex. App.—Fort Worth 2001, pet. ref'd). The result-of-conduct element required proof that Harris "intentionally, knowingly, or recklessly cause[d] serious bodily injury to Chris Gonzales." *See* TEX. PENAL CODE ANN. § 22.01(a)(1); *Cole*, 46 S.W.3d at 434; *Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.) (describing assault as a result-oriented offense and explaining that assault requires "causing a certain result"). The circumstances-surrounding-conduct element required proof that Harris knew that Gonzales was a public servant. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (making the offense of assault a third-degree felony when the "offense is committed against . . . person the actor knows if a public servant while the public servant is lawfully discharging an official duty").

Regarding the applicable culpable mental states, the abstract portion of the charge providing the following:

> A person acts intentionally, or with intent, with respect to the nature of his or her conduct or a result of his or her conduct when it is his or her conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his or her conduct or to circumstances surrounding his or her conduct when he or she is aware of the nature of his or her conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his or her conduct when he or she is aware that his or her conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to the results of his or her conduct when he or she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances, as viewed from the actor's standpoint.

These instructions defining the culpable mental states included language as to all the "conduct elements." *See McQueen*, 781 S.W.2d at 603; *see also* TEX. PENAL CODE ANN. § 6.03.

Nevertheless, the application portion of the jury charge stated:

Now, if you find and believe from the evidence beyond a reasonable doubt that on or about the 7th day of February 2021, in Hill County, Texas, the defendant, REGINALD HARRIS, did then and there intentionally, knowingly, or recklessly cause bodily injury to Chris Gonzalez [sic] by striking him on or about the head with a table leg and the Defendant used or exhibited a deadly weapon, to-wit: a table leg, and the Defendant did then and there know that the said Chris Gonzalez [sic] was a public servant, to-wit: a Hill County Corrections Officer, in the lawful discharge of an official duty as a Hill County Corrections Office, or on account of an exercise of official power or performance of an official duty by Chris Gonzalez [sic] as a public servant, then you will find the Defendant guilty as charged in the indictment.

The jury was instructed that it could convict Harris of aggravated assault on a public servant only if it found that he had intentionally, knowingly, or recklessly caused the result (serious bodily injury), and that he did so under the requisite circumstances of conduct (with knowledge that Officer Gonzales was a public servant). This instruction is consistent with the statutorily prohibited conduct. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(2)(B); *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the

application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense."); *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) (noting that in considering the jury charge as a whole, when the purported error involves the misstatement of the required culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge").

Accordingly, we conclude that consideration of the entire jury charge, as applied in the factual context of this case, weighs against a finding of egregious harm.

**State of the Evidence**

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015).

Here, there is ample evidence of Harris's guilt, which mitigates any harm that the jury charge may have caused. Investigator Kyle Nevil of the Hill County Sheriff's Office

testified that Officer Gonzales was wearing his official uniform and performing his official duties at the time of the attack. Nevil further testified that Harris used a deadly weapon, a table leg, when assaulting Officer Gonzales and that Officer Gonzales suffered bodily injury because of the attack. The State then played surveillance footage, which captured the attack. Nevil recounted that the video footage showed Harris rip a leg from a table and run toward Sergeant Teresa Gandee, who was also in a jailer uniform. Nevil further testified that the video footage showed Harris strike a computer monitor and a Xerox copy machine with the table leg. Sergeant Gandee called for help, and Officer Gonzales responded. When Officer Gonzales arrived, Harris struck Officer Gonzales in the head forcefully with the table leg while Officer Gonzales was wearing his official uniform and performing official duties. Officer Gonzales bled all over the floor and the wall of the jail and required six staples on the back of his head and thirteen staples on the top of his head to close the wounds. While Officer Gonzales was fighting with Harris on the floor, Officer Gonzales's jailer keys fell out of his pants, and Harris grabbed the keys.

Nevil noted that Harris admitted to using drugs and that Harris later exclaimed, "I was on something, Brother." Harris testified that he was upset and afraid of being put in a regular holding cell because he did not want to be around anyone else who may have had COVID-19. Harris explained that he struck Officer Gonzales with the table leg out of fear of COVID-19, but he acknowledged that he was wrong and not justified in hitting

Officer Gonzales. Later in his testimony, Harris noted that he saw Officer Gonzales a few weeks later "back to his usual thing" and that he apologized.

It is also noteworthy that, in arguing for a mistake-of-fact instruction related to COVID-19, defense counsel confirmed "[h]e had to admit the elements of the crime, that he was guilty. We have done that. We have maintained that the entire trial." From this evidence, a reasonable factfinder could conclude beyond a reasonable doubt that Harris committed the offense of aggravated assault of a public servant. As such, we cannot say that this factor weighs in favor of a finding of egregious harm.

**Arguments of Counsel**

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844. During its closing argument, the State detailed Harris's intent to commit the assault and made a brief statement about Officer Gonzales's status as a public servant. However, defense counsel acknowledged the following during closing argument: "One of the indisputable facts is that an assault occurred. . . . The other is that Mr. Harris committed an assault." In other words, Harris's defensive strategy was to not dispute that he committed an assault. Rather, defense counsel emphasized Harris's erratic behavior at and around the time of the attack and that he should have been taken to the hospital and not placed in a holding cell. Defense counsel also challenged some of the actions of the jailers, especially the fact

that Sergeant Gandee, without backup, let Harris out of the holding cell unrestrained. Later, defense counsel reiterated that: "Obviously, I made it very clear to you that Mr. Harris is guilty." However, according to defense counsel, the system failed Harris by not taking him to the hospital on account of his erratic behavior. In rebuttal, the State urged that Harris is unwilling to take responsibility for his actions and that all the arguments made by defense counsel during closing do not negate the fact that Harris intentionally, knowingly, or recklessly struck Officer Gonzales, a public servant. The State also emphasized that Harris did not call any witnesses to opine on his mental health.

While there was discussion of the culpable mental states, Harris conceded that the elements of assault were met. Furthermore, the parties did not emphasize Harris's knowledge of Officer Gonzales's status as a public servant. Accordingly, we cannot say that the closing arguments of the parties exacerbated the purported error in the jury charge. Therefore, we conclude that this factor does not weigh in favor of a finding of egregious harm.

**Other Relevant Information in the Record**

As to the fourth factor, Harris contends that there are no other considerations in the record that are relevant to the egregious-harm analysis. We agree. As such, this factor weighs against a finding of egregious harm.

**Summary**

Based on the foregoing, we conclude that any error in the abstract portion of the charge was not calculated to injure Harris's rights or deprive him of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. We overrule Harris's first issue.

### Court Costs

In his second issue, Harris asserts that the trial court assessed $12 in reimbursement fees that are not supported by the record or the facts. The State agrees.

Here, the trial court assessed $290 in court costs and $67 in reimbursement fees with no fine or restitution. The attached order to withdraw funds indicated that the total amount of court costs, fees, fines, and restitution incurred was $357, which is the summation of the $290 in court costs and $67 in reimbursement fees assessed in the trial court's judgment. However, the certified bill of costs lists the balance due of $345, which is $12 less than the amount assessed in the trial court's judgment and recited in the attached order to withdraw funds.

Included in the certified bill of costs are the "State Consolidated Court Costs," which are authorized by section 133.102(a)(1) of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1). Furthermore, the line items in the certified bill of costs corresponding with "Clerk of the Court [$40]," "Count & District Court Technology Fund [$4]," "County Jury Fund [$1]," "County Records Mgmnt &

Preservation [$25]," "County Specialty Court Acct [$25]," and "Courthouse Security [$10]" account for the local consolidated fee that is authorized by section 134.101 of the Texas Local Government Code. *See id.* § 134.101. The remaining line items in the certified bill of costs—"Peace Officer: Commit or Release from Jail [$5]" and "Peace Officer: Exec/Proc AW/Capias/Capias ProFine County [$50]"—are authorized under section 102.011(a)(1) and (a)(2). *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1)-(2). These are all the fees listed in the certified bill of costs, and the summation of these fees is $345. There is no justification in this record for the additional $12 in reimbursement fees assessed in the trial court's judgment and referenced in the order to withdraw funds. As such, we agree with Harris and the State that both the trial court's judgment and the order to withdraw funds should be modified to reduce the amount of reimbursement fees owed by $12. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *see also Trotter v. State*, No. 02-20-00042-CR, 2021 Tex. App. LEXIS 3501, at *8 (Tex. App.—Fort Worth May 6, 2021, no pet.) (mem. op., not designated for publication) (modifying both the

judgment and the order to withdraw funds to reduce the amount of reparations owed).

Accordingly, we sustain Harris's second issue.

## Conclusion

Having sustained Harris's second issue, we modify the judgment and the attached order to withdraw funds to reduce the amount of reimbursement fees owed by $12. We affirm the trial court's judgment as modified.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
(Chief Justice Gray concurs)
Affirmed as modified
Opinion delivered and filed December 7, 2022
Do not publish
[CRPM]

