# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-18-00265-CR[1]

**Bryant Lawrence Faulkenberry, Appellant**

**v.**

**The State of Texas, Appellee**

#### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
#### NO. 75191, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Bryant Lawrence Faulkenberry guilty of the third-degree felony offense of assault on a public servant. *See* Tex. Penal Code § 22.01(b)(1). Appellant elected to have the jury decide his punishment, and the jury assessed appellant's punishment at confinement for six years in the Texas Department of Criminal Justice, Institutional Division, with a recommendation that he be placed on community supervision. The trial court rendered judgment in accordance with the jury's verdict. In one issue, appellant complains about error in the jury charge. Finding no reversible error, we affirm the trial court's judgment of conviction.

---

[1] The notice of appeal in this case was originally filed in November 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals pursuant to its docket equalization authority. *See* Tex. Gov't Code § 73.001; Misc. Docket No. 16-9040 (Tex. Mar. 22, 2016) (per curiam). This Court transferred the case to our sister court in December 2016. In April 2018, the Supreme Court of Texas ordered that this case, along with certain other cases, be transferred back to this Court from the Eighth Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018) (per curiam).

## Background[2]

In November 2015, police officers with the Killeen Police Department were dispatched to an apartment complex concerning a disturbance or fight. The responding officers were dressed in their uniforms, and one of the officers was Kellye McDermott. After the officers arrived, a group of people disbursed, but appellant, who was a soldier in the military, remained. Based on their observations of appellant, the officers determined that appellant was intoxicated and offered him a taxi or for him to call someone in his chain of command. The officers, however, eventually determined that he was a danger to himself or others based in part on his "aggressive behavior" and placed him under arrest for public intoxication, taking him to the ground in order to restrain and handcuff him. After he was handcuffed, two of the officers were escorting appellant, who was wearing boots, to a patrol car for transport when appellant "leaned back" and kicked Officer McDermott's hand.

Based on this incident, appellant was charged by indictment with the offense of assault on a public servant. Specifically, the indictment alleged that appellant

> did then and there intentionally, knowingly, and recklessly cause bodily injury to Kellye McDermott by kicking Kellye McDermott, and the defendant did then and there know that the said Kellye McDermott was then and there a public servant, to-wit: a police officer, and that the said Kellye McDermott was then and there lawfully discharging an official duty, to-wit: placing defendant under arrest and securing defendant after he had been placed under arrest.

---

[2] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and exhibits admitted at trial.

*See* Tex. Penal Code § 22.01(a)(1), (b)(1).

The jury trial occurred in October 2016. The responding officers, including Officer McDermott, testified on behalf of the State, and appellant testified on his own behalf. The officers testified that they were on duty when they were dispatched to the apartment complex concerning the disturbance or fight and that they were in their police uniforms and in marked patrol cars. They also described their interactions with appellant and appellant's appearance and conduct. As to the signs of intoxication that they observed, one of the officers testified that appellant "was stumbling around quite a bit, unable to stand up," that the officer could smell the odor of alcohol coming from appellant's breath, and that appellant's eyes were "glossy" and "bloodshot." The officer also testified that he and another officer had to take appellant to the ground to handcuff him after he "began to fight, try to shove [the officers] off of him" and that appellant "leaned back" and kicked Officer McDermott after he had been handcuffed and was being escorted to the patrol car. Officer McDermott testified that the other officers were "struggling to detain" appellant so she provided assistance, and, after appellant was handcuffed and being escorted to the patrol car, he "leaned back and kicked [her] in the hand," that it hurt, and that the kick "made full contact," causing "swelling and broken skin," although she did not seek medical attention. The exhibits included a video recording of appellant kicking Officer McDermott.

In his testimony, appellant provided a different account of his interactions with the officers, but he did not dispute that he was "flailing" about and was intoxicated at the time and that the video showed him kicking Officer McDermott. He testified that one could "blatantly see from

3

the video" that he kicked the officer,[3] but he explained that he did not mean to kick and did not

remember kicking the officer, and he was "absolutely sorry" that he "kicked her." He also testified

that he "just [didn't] go around kicking people" and that "[i]f [he was] flailing, she got in the way."

He further explained that he did not intentionally kick her and that he "was jerking all over the

place." According to appellant, he suffered from and was being treated for anxiety and depression,

he was self-medicating with alcohol, and, "when people start grabbing [him] or trying to restrain

[him] is when [his] anxiety start[ed] to flare up." He also testified that he was injured by the officers

and that he had a designated driver for the night.

At the conclusion of the guilt-innocence phase of the trial, the court instructed the jury

regarding convicting appellant of assault on a public servant or, if not, the lesser included offense

of resisting arrest. The jury found appellant guilty of assault on a public servant. Following the

sentencing phase of the trial, the jury assessed punishment at six years' confinement with a

recommendation of community supervision, and the trial court rendered judgment in accordance

with the jury's verdict. This appeal followed.

**Discussion**

In his sole issue, appellant asserts that the trial court erred by failing to properly

instruct the jury regarding the culpable mental states and that the errors caused him to suffer

egregious harm. He argues that "[t]he offense of assaulting a public servant has two applicable

culpable mental states or conduct elements" with one being "result-oriented" and the other one being

---

[3] Later in his testimony, appellant conceded that "obviously [they] saw on the video that [he] kicked her."

"circumstances-oriented" and that the trial court erred by: (i) "including definitions of the terms 'intentionally,' 'knowingly,' and 'recklessly' in the jury charge that instructed the jury regarding aspects of these culpable mental states that do not apply to the charged offense"; (ii) "failing to define the term 'knowingly' regarding the result of the actor's conduct"; and (iii) "failing to tailor the definitions of these culpable mental states to the elements of the offense charged."

**Standard of Review and Applicable Law**

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error has not been properly preserved by an objection or request for instruction, as it was not here, the error requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *accord Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015) (explaining "three different

5

categories of offenses based on the offense-defining statute's gravamen, or focus: 'result of conduct,' 'nature of conduct,' or 'circumstances of conduct'"). An offense may contain any one or more of these "conduct elements," which alone or in combination form the overall behavior that the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *McQueen*, 781 S.W.2d at 603; *see* Tex. Penal Code § 6.03 (defining culpable mental states). Thus, the statutory definitions of the culpable mental states in a jury charge should be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 487–88 (Tex. Crim. App. 1994).

**Was there reversible error in the jury charge?**

Appellant's challenge to the jury charge concerns some of the trial court's definitions in the abstract portion of the jury charge. In that portion of the charge, the trial court defined the offense of assault on a public servant as charged in the indictment, with accompanying definitions of "person," "individual," "bodily injury" and "public servant."[4] *See* Tex. Penal Code § 20.02. Relevant to appellant's issue, the trial court then provided the following instructions defining the culpable mental states of acting "intentionally," "knowingly," and "recklessly" in the next paragraph of the abstract portion of the charge:

---

[4] The trial court defined the offense of assault on a public servant as follows:

A person commits the offense of Assault on a Public Servant if he or she intentionally or knowingly or recklessly causes bodily injury to a person the defendant knew was a public servant while the public servant was performing a duty as a public servant.

6

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct, when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

These instructions defining the culpable mental states included language as to all of the "conduct elements." *See McQueen*, 781 S.W.2d at 603; *see also* Tex. Penal Code § 6.03.

But, as charged in the indictment in this case, assault on a public servant required proof of two separate conduct elements—result of the conduct and circumstances surrounding the conduct—with different culpable mental states as to the two separate conduct elements. *See* Tex. Penal Code § 22.01(a), (b)(1); *Cole v. State*, 46 S.W.3d 427, 433–34 (Tex. App.—Fort Worth 2001, pet. ref'd) (explaining relevant conduct elements and "separate, culpable mental states" for offense of assault on public servant). The result-of-conduct element required proof that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to another." *See Cole*, 46 S.W.3d at 434; *see also* Tex. Penal Code § 22.01(a)(1); *Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.) (describing assault as result-oriented offense and explaining that assault requires "causing a certain *result*"). And the circumstances-surrounding-conduct element required proof that appellant knew that Officer McDermott was a public servant. *See Cole*, 46 S.W.3d at 434;

7

*see also* Tex. Penal Code § 22.01(b)(1) (making offense of assault third-degree felony when "offense is committed against . . . person the actor knows is a public servant while the public servant is lawfully discharging an official duty").

In this context, we agree with appellant that there was error in the jury charge, and the State does not argue otherwise. Among the errors in the charge, the trial court included language addressing the nature-of-conduct element in its instructions defining the culpable mental states of acting "intentionally" and "knowingly" even though it was not applicable; included language addressing the circumstances-surrounding-conduct element in its instructions defining the culpable mental state of acting "recklessly" even though it was not applicable; and did not tailor the instructions so that the definitions of the appropriate statutory culpable mental states were applied to the separate conduct elements of the offense. *See Price*, 457 S.W.3d at 441; *Cook*, 884 S.W.2d at 487–88, 491.

Thus, having found error in the jury charge, we consider whether appellant was egregiously harmed by the error. Appellant did not object to the jury charge to preserve the complaints that he raises on appeal and, thus, reversal is required only if the error in the jury charge was "so egregious and created such harm that [appellant] was deprived of a fair and impartial trial." *See Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171; *see also State v. Ambrose*, 487 S.W.3d 587, 595 (Tex. Crim. App. 2016) (reaffirming that under precedent of Court of Criminal Appeals, unpreserved jury charge error does not require new trial unless error causes "egregious harm").

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433 (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)); *see Marshall*, 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the *entire* record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error.").

In examining the record to determine whether jury charge error has resulted in egregious harm, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. The analysis is "fact specific and is done on a 'case-by-case basis.'" *Arrington*, 451 S.W.3d at 840 (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

**Entirety of the Jury Charge**

In considering the jury charge as a whole, when the error involves a misstatement of the required culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492 n.6. In this case, although the trial court gave incorrect, non-tailored definitions of the culpable mental states in the abstract portion of the charge, the court's instruction in the application paragraph properly applied the law to the factual context. The trial court instructed the jury as follows:

> Now bearing in mind the foregoing instructions and definitions, if you find beyond a reasonable doubt that on or about the 22nd day of November, 2015, in Bell County, Texas, the defendant, Bryant Lawrence Faulkenberry, did then and there intentionally, knowingly, or recklessly cause bodily injury to Kellye McDermott, by kicking Kellye McDermott, and the defendant did then and there know that the said Kellye McDermott was then and there a public servant, and that the said Kellye McDermott was then and there lawfully performing a duty as a public servant, to wit: placing the defendant under arrest or securing the defendant after he had been placed under arrest, then you will find the defendant "Guilty" as charged in the indictment; and so say by your verdict. But if you do not believe or if you have a reasonable doubt thereof, you will acquit the defendant and next consider if the defendant is guilty of the less serious offense of Resisting Arrest, Search or Transportation.

The jury was instructed that it could convict appellant of assault on a public servant only if it found that he had intentionally, knowingly, or recklessly caused the result (bodily injury), and that he did so under the requisite circumstances of the conduct (with knowledge that Officer McDermott was a public servant). This instruction is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code § 22.01(a)(1), (b)(1); *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App.

10

1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *see also Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense.").

Accordingly, we conclude that consideration of the entirety of the jury charge, as applied in the factual context of this case, weighs against a finding of egregious harm.

**State of the Evidence**

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal*, 453 S.W.3d at 433. Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841.

In this case, the evidence was undisputed that the officers had been dispatched to the apartment complex as part of their duties as police officers, that they were in their police uniforms, that appellant was intoxicated and combative, and that appellant kicked Officer McDermott in the hand after he had been handcuffed and was being escorted to the patrol car for transport. Although he testified that he was not sure that he made contact with her, that he "would not intentionally kick her," and that "if [he was] flailing, she got in the way," appellant conceded that he was intoxicated,

and that the video recording showed him kicking Officer McDermott.[5] The officers testified consistently that appellant kicked Officer McDermott after he was handcuffed and being escorted to the patrol car, and Officer McDermott testified that appellant's kick made "full contact," causing pain, "swelling," and "broken skin."

After reviewing the evidence, we conclude that the state of the evidence weighs against a finding of egregious harm.

**Arguments of Counsel**

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844.

---

[5] The instructions to the jury in the charge included:

Voluntary intoxication does not constitute a defense to the commission of a crime.

. . . .

The actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant.

Appellant does not challenge these instructions. Further, when asked about how he felt about the video recording when he saw it, appellant testified:

Oh, well, what I saw on the video and that's a rather embarrassing situation to have to show my face in front of all these individuals because their first impression of me is that I'm some deranged lunatic that should probably be locked away for a long time, safe to say.

12

In closing arguments, the prosecutor addressed the two separate conduct elements and their respective culpable mental states to support a conviction of assault on a public servant as follows:

> But I'm going to ask you to find him guilty of the felony because you know he's guilty of the felony. All you have to do is to look at this tape at 5:35 and you see the defendant intentionally lean back, kick out. At that point he knowingly, intentionally or recklessly causes bodily injury to Kellye McDermott, someone he knows is a peace officer. He's guilty of the felony.

*See* Tex. Penal Code § 22.01(a)(1), (b)(1). The prosecutor's argument directing the jury to the respective required culpable mental states for the separate conduct elements ameliorated the error in the charge.

In his closing argument, defense counsel did not dispute that appellant had kicked a public servant but asked the jury to decide the case based on the misdemeanor offense of resisting arrest, arguing that appellant's conduct "[did] not rise to the felony level." He directed the jury to the evidence that: (i) appellant was intoxicated and impaired, both physically and mentally, and (ii) Officer McDermott "was not hurt severely." He also argued that part of the duties of officers was "this sort of thing that they encounter not just on a monthly basis or a weekly basis, but a daily basis." Defense counsel did not directly address the required culpable mental states for the conduct elements or reference the definitions in the charge.

After considering the arguments of counsel, we conclude that they weigh against a finding of egregious harm.

13

**Other Relevant Information in the Record**

As to the fourth factor, our review of the record has disclosed no other relevant information that requires our consideration in the egregious harm analysis.

**Conclusion Regarding Harm**

After reviewing the record and considering the relevant factors, we hold that the trial court's errors in its instructions defining the culpable mental states in the abstract portion of the jury charge did not egregiously harm appellant. We overrule appellant's issue.

**Conclusion**

Having overruled appellant's issue, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: July 31, 2018

Do Not Publish

14